PEOPLE v LEMMON

Docket No. 105850. Argued November 4, 1997 (Calendar No. 2). Decided March 24, 1998. Rehearing denied 457 Mich 1201.

Joseph C. Lemmon was convicted by a jury in the Wayne Circuit Court, Carole F. Youngblood, J., of one count of first-degree criminal sexual conduct, and four counts of second-degree criminal sexual conduct involving two daughters of his former girlfriend. Thereafter, the court granted the defendant's motion for a new trial on the basis of *People v Herbert*, 444 Mich 466 (1993), noting contradictory testimony and the demeanor of the girls. The Court of Appeals, WHITE, P.J., and CORRIGAN and MARKMAN, JJ., in an unpublished order, stayed the new trial and remanded the case for a full statement of the reasons for granting the motion, including a specific explanation of why the witnesses' testimony was not credible and why the verdict was against the great weight of the evidence (Docket No. 189329). On remand, the trial court reaffirmed. The Court of Appeals denied leave to appeal, but two members of the panel questioned the principles and merits of *Herbert*. The people appeal.

In an opinion by Justice BOYLE, joined by Chief Justice MALLETT, and Justices BRICKLEY, WEAVER, and TAYLOR, the Supreme Court *held*:

A trial judge may not repudiate a jury verdict on the ground that the testimony of a witness for the prevailing party is to be disbelieved. A judge may not sit as the thirteenth juror, and may grant a new trial only if the evidence preponderates heavily against the verdict so that it would be a miscarriage of justice to allow the verdict to stand.

1. Due process commands a directed verdict of acquittal when sufficient evidence is lacking to justify a rational trier of fact in finding guilt beyond a reasonable doubt. Under MCL 770.1; MSA 28.1098, as well as MCR 6.431(B), a trial court, in the interest of justice or to prevent a miscarriage of justice, may grant the defendant's motion for a new trial. It is the province of the jury, however, to determine questions of fact and assess the credibility of witnesses. When testimony is in direct conflict and testimony supporting the verdict has been impeached, if it cannot be said as a matter of law that the testimony impeached was deprived of all probative

value or that the jury could not believe it, the credibility of witnesses is for the jury. Thus, a new trial should be granted on the basis of the weight of the evidence only where the evidence preponderates heavily against the verdict and a serious miscarriage of justice otherwise would result.

2. Conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial under the limitations of *Herbert* adopted today. The thirteenth juror principle is an erroneous legal standard. It does not establish that an innocent person had been found guilty or that evidence preponderated heavily against the verdict so that it would be a serious miscarriage of justice to permit the verdict to stand.

3. Because the trial court's error in ordering a new trial was based on the thirteenth juror standard previously permitted under *Herbert*, the limitations on *Herbert* apply prospectively from March 24, 1998.

Justice CAVANAGH, joined by Justice KELLY, concurring, stated that the holding of the majority is further elaboration of the statement of the Supreme Court in *Herbert*, and, therefore, it is unnecessary to overrule any portion of that opinion.

The term "thirteenth juror" does not mean that the trial judge substitutes personal judgment for that of the jury; rather, it refers to the trial judge's unique position, enabling the judge to observe the presentation of evidence in court. Thus, it is entirely consistent to say that a trial judge sits as a thirteenth juror when evaluating the weight of the evidence presented at trial, but that the judge should invoke this perspective sparingly when granting a new trial on the basis of the great weight of the evidence.

The majority characterizes the *Herbert* decision as allowing a judge to effectively set aside a jury verdict any time the judge would hold otherwise. Rather, referring to the trial judge as the thirteenth juror is an analogy to the trial judge's unique position to view the evidence and the witnesses in court. Unlike an appellate judge, the trial judge sits alongside the jury and is able to form opinions with respect to the strengths and weaknesses of the respective party's cases. This does not mean that the trial judge acts like a juror, however, or orders a new trial every time the judge disagrees with the jury's conclusions. *Herbert* specifically states that review of a jury's verdict under the great weight of the evidence standard is to be undertaken mindful of the special role accorded jurors under our constitutional system of justice. The majority opinion gives substance to the meaning of the special role accorded jurors under our constitutional system of justice.

Affirmed.

*People v Herbert,* 444 Mich 466; 511 NW2d 654 (1993), overruled.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, and *Timothy A. Baughman,* Chief, Research, Training and Appeals, for the people.

State Appellate Defender (by *P. E. Bennett*) for the defendant.

BOYLE, J. We granted leave to appeal to address whether the trial court erred in granting defendant's motion for a new trial on the basis that the great weight of the evidence standard established in *People v Herbert,* 444 Mich 466, 476; 511 NW2d 654 (1993), permitted the trial judge to act as a "thirteenth juror." Insofar as it authorizes judges to grant new trial motions on the basis of a disagreement with juror assessment of credibility, *Herbert* is overruled. A trial judge does not sit as the thirteenth juror in ruling on motions for a new trial and may grant a new trial only if the evidence preponderates heavily against the verdict so that it would be a miscarriage of justice to allow the verdict to stand.

I

FACTS AND PROCEDURE

Defendant Joseph Lemmon was convicted of five counts of criminal sexual conduct following a jury trial held before Judge Carole F. Youngblood. He was found guilty of one count of first-degree criminal sexual conduct[1] and two counts of second-degree crimi-

---

[1] MCL 750.520b; MSA 28.788(2).

nal sexual conduct[2] against one daughter and two counts of CSC II against the other daughter of his former girlfriend, Deborah Buell. Ms. Buell met and then lived with Joseph Lemmon for a short time in 1988. During that time, Mr. Lemmon fathered a son, the youngest child of Ms. Buell; however, the relationship ended before James was born. The couple later resumed their relationship in 1992 and Joseph Lemmon moved in with Ms. Buell and her three other children, two daughters, ages eleven and eight, and a son, age six. He lived with them as a member of the family from November, 1992, until August, 1993.

The older daughter testified that, on four different occasions, when her mother was not in the home, the defendant sexually abused her. The separate incidents occurred on different days and involved defendant lifting her bra and playing with her breasts when putting cream on her pimples, putting his finger into her vagina, attempting penile penetration of her vagina, and sucking her breast. She testified that defendant was responsible for discipline during the time he lived in the house and that while he never physically disciplined her, he did ground her for bad report cards. She further testified that she did not tell anyone what had happened because defendant told her that it was just between the two of them and "not to tell no one" and that if she did, she "would get hurt."

The younger daughter testified that she had been the victim of the defendant's sexual abuse on two occasions. Both incidents, which were similar in nature, occurred when her mother was not present in the home and took place in the bedroom Mr. Lemmon

---

[2] MCL 750.520c; MSA 28.788(3).

shared with her mother. She stated that, on different days, defendant called her into the bedroom telling her he wanted to show her something. When she went into the room, defendant pulled down his pants, exposed himself, and told her to touch his penis. When she refused, he grabbed her hand, placed it on his penis, and forced her to rub it. She further testified that defendant disciplined her during the time he lived with her mother and would sometimes whip her or confine her to her room. She also testified that defendant told her not to tell anyone what had transpired and that if she did, he "would do something" and she would "be in big trouble."

Both girls testified that they did not tell their mother what had happened until after Mr. Lemmon and their mother had separated and both parties had moved out of the house they shared. Their mother confirmed this portion of the girls' testimony, stating that the girls had not indicated that any type of sexual abuse had occurred during the time she was living with Mr. Lemmon. Ms. Buell testified that it was her decision to break off the relationship with Mr. Lemmon, but that it was not until after the relationship had ended, and she and her children had moved into her parent's home that she was informed of the abuse.

Defense counsel for Mr. Lemmon cross-examined the girls in an attempt to impeach their testimony. He obtained admissions from the older daughter that there were times that she had not told the truth and later admitted to the lie by telling the truth. Specifically, defense counsel elicited from her falsehoods that included instances such as lying about stealing a candy bar, smoking in the woods, not giving notes

from her teacher to her parents, taking food off her brothers' plates, going places with friends, riding her bike in the street, and saying she had finished homework when she had not, or cleaned her room when she had not. On cross-examination of the younger daughter, defense counsel obtained admissions that she had not told the truth only when she said she had cleaned her room, but had not, and told her mother she was going one place, but went another. She denied other allegations that she had lied about homework or lied to get her sister in trouble.

Defendant presented several witnesses and testified in his own defense. He stated that his relationship with Ms. Buell had its ups and downs, that she was very jealous, and wanted everything her own way. In contrast to the testimony of Ms. Buell, the defendant claimed that he initiated the breakup. He further indicated that when he moved out of the house he was still on speaking terms with Ms. Buell. Additionally, he denied ever sexually abusing either girl and stated that Ms. Buell was present the one time he had put cream on the older daughter's spots. He agreed that he was involved in disciplining the girls but that he had never hit either of them. He could give no reason for either of the girls to be angry with him, hold anything against him, or make up allegations against him.

At the close of the people's proofs, the prosecutor agreed to dismiss a third count of CSC II concerning the older daughter because she could only recall two specific instances of sexual contact, although there might have been three. There was no motion for a directed verdict regarding the other counts. After Mr. Lemmon presented his defense, the case was submit-

ted to the jury who found the defendant guilty on all five remaining counts.

At sentencing, the defendant submitted a motion for a directed verdict or new trial, which was denied. The trial judge imposed a two- to fifteen-year term for one conviction of CSC I[3] and two- to ten-year terms for each conviction of CSC II,[4] to run concurrently. In July, 1995, defendant obtained new counsel and filed another motion for a directed verdict or a new trial. The motion was granted by Judge Youngblood on the basis of *People v Herbert, supra.* The court noted that *Herbert* allowed a new trial when the verdict is against the great weight of the evidence or to prevent an injustice and stated that the new trial motion was granted after reviewing the whole body of proofs, particularly the contradictory testimony and demeanor of the girls.

The prosecutor filed a delayed application for leave to appeal the decision to grant a new trial.[5] The Court of Appeals stayed the new trial and remanded the case to Judge Youngblood "for a full statement of the court's reasons for granting the motion for new trial, including a specific explanation of why the court found the witnesses' testimony not credible and the verdict against the great weight of the evidence." Unpublished order of the Court of Appeals, entered November 20, 1995 (Docket No. 189329).

---

[3] MCL 750.520b(2);  MSA 28.788(2)(2).

[4] MCL 750.520c(2);  MSA 28.788(3)(2).

[5] In the interim, the prosecutor had filed a motion to disqualify Judge Youngblood, citing the judge's views on witness credibility. This motion was denied by Judge Youngblood and later by Chief Wayne Circuit Judge James Rashid.

In the written opinion reviewed here, the trial court observed that both prosecution witnesses "lacked credibility." She cited their "poor memory of any details" as to time or events, the "illogic" of their description of the circumstances surrounding the sexual assaults, their "poor reputation for truthfulness," and the fact that the information regarding the assaults had not been disclosed until months after their occurrence and "after the defendant had rejected the family relationship." The judge also found the demeanor of the witnesses questionable in that the older daughter "giggled at times, but not at embarrassing moments when one might expect a child to giggle," that "[b]oth children appeared to look at the prosecutor and others in the courtroom for approval rather than candidly testifying as to their memory," and used sexually explicit words and phrases "without any hesitation or embarrassment." The judge indicated that "[t]he only evidence of the defendant's guilt was the testimony of [the girls]. There were no medical records, counseling records, or corroborating testimony."[6]

Finally, the judge reaffirmed her opinion that the verdict had resulted in a "miscarriage of justice" stating that the "credibility of the orally-testifying witnesses and their demeanor leaves this court with a firm belief that the defendant should be tried by a different jury."

The Court of Appeals denied the prosecutor's application for leave to appeal. However, Judge CORRIGAN

---

[6] MCL 750.520h; MSA 28.788(8) explicitly states:

The testimony of a victim need not be corroborated in prosecutions under sections 520b to 520g.

observed that she had consistently questioned the principle of *People v Herbert* that a trial court may sit as a thirteenth juror. Judge CORRIGAN stated that, in her view, the credibility of the two witnesses had not been significantly impugned but could not say that the trial judge had abused her discretion in granting a new trial. Judge MARKMAN agreed that, given the authority vested in the trial courts under *People v Herbert*, there was no "abuse of discretion" on the part of the trial judge and joined Judge CORRIGAN in questioning the merits of *Herbert*. Unpublished order of the Court of Appeals, entered March 12, 1996 (Docket No. 189329). The prosecutor appealed, and we granted leave to appeal.

II

The issue presented is rooted in the difference between the standard for granting a new trial and that required to grant a directed verdict of acquittal. Due process commands a directed verdict of acquittal[7]

---

[7] MCR 6.419 provides:

(A) Before Submission to Jury. After the prosecutor has rested the prosecution's case in chief and before the defendant presents proofs, the court on its own initiative may, or on the defendant's motion must, direct a verdict of acquittal on any charged offense as to which the evidence is insufficient to support conviction. . . .

(B) After Jury Verdict. After a jury verdict, the defendant may file an original or renewed motion for directed verdict of acquittal in the same manner as provided by MCR 6.431(A) for filing a motion for a new trial.

MCL 730.518; MSA 27.3937(18) states:

In any city affected by the provisions of this act the judge presiding in any jury trial shall have the same power to direct a verdict for either party as is or may be possessed by judges of the circuit courts of the state.

Compare similar standards under FR Crim P 29:

when "sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt," *People v Hampton*, 407 Mich 354, 366; 285 NW2d 284 (1979), citing *Jackson v Virginia*, 443 US 307; 99 S Ct 2781; 61 L Ed 2d 560 (1979), is lacking. If the evidence presented by the prosecution in the light most favorable to the prosecution, up to the time the motion is made, is insufficient to justify a reasonable trier of fact to find guilt beyond a reasonable doubt, a directed verdict or judgment of acquittal must be entered.[8] *Hampton, supra* at 368.

Under statute,[9] as well as the court rule,[10] the operative principles regarding new trial motions are that the court "may," in the "interest of justice" or to pre-

---

(a) Motion before Submission to Jury. Motions for directed verdict are abolished and motions for judgment of acquittal shall be used in their place. The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses.

\*    \*    \*

(c) . . . If the jury returns a verdict of guilty or is discharged without having returned a verdict, a motion for judgment of acquittal may be made or renewed . . . . If a verdict of guilty is returned the court may on such motion set aside the verdict and enter judgment of acquittal.

[8] In contrast, granting a new trial does not implicate issues of constitutional magnitude and is permissive in nature. *Hampton, supra* at 373; *Herbert, supra* at 475.

[9] MCL 770.1; MSA 28.1098 provides:

The judge of a court in which the trial of an offense is held may grant a new trial to the defendant, for any cause for which by law a new trial may be granted, or when it appears to the court that justice has not been done, and on the terms or conditions as the court directs.

[10] MCR 6.431(B) provides:

vent a "miscarriage of justice," grant the defendant's motion for a new trial.[11] In *Herbert*, we noted that, in addition to preventing injustice, a new trial may be granted if the verdict is against the great weight of the evidence. While the great weight of the evidence standard for granting a new trial is traceable to long-standing case law, *People v Henssler*, 48 Mich 49, 51; 11 NW 804 (1882),[12] *Herbert* is the first opinion decided by this Court requiring consideration of the standard for granting new trial motions in light of the constitutional mandate announced in *Jackson* and recognized in *Hampton*.

---

Reasons for Granting. On the defendant's motion, the court may order a new trial on any ground that would support appellate reversal of the conviction or because it believes that the verdict has resulted in a miscarriage of justice. The court must state its reasons for granting or denying a new trial orally on the record or in a written ruling made a part of the record.

Compare a similar standard under FR Crim P 33:

The court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice. If trial was by the court without a jury the court on motion of a defendant for a new trial may vacate the judgment if entered, take additional testimony and direct the entry of a new judgment.

[11] See, generally, 3 Wright & Miller, Federal Practice & Procedure, §§ 551, 553, and Seward, *The sufficiency-weight distinction—A matter of life or death*, 38 U Miami L R 147 (1983).

[12] See *Tibbs v Florida*, 457 US 31, 38, n 11; 102 S Ct 2211; 72 L Ed 2d 652 (1982). The United States Supreme Court acknowledged that the Florida Supreme Court ruled that appellate courts in that state could no longer reverse convictions on the ground of the great weight of the evidence. However, the Court noted that "[c]ourts in other jurisdictions sometimes rely upon the weight of the evidence to overturn convictions" and that some federal courts have interpreted FR Crim P 33 to permit a trial judge, " 'if required in the interest of justice,' " to "set aside a conviction that is against the weight of the evidence." *Id.* at 38-39, n 12. The Court further noted that "[a] reversal based on the weight of the evidence . . . can occur only after the State both has presented sufficient evidence to support conviction and has persuaded the jury to convict." *Id.* at 42-43.

In *Herbert, supra* at 476, we quoted with approval Judge Frank's concurring opinion in *Dyer v MacDougall*, 201 F2d 265, 271-272 (CA 2, 1952), that " '[o]n a motion for new trial, the judge acts "as the thirteenth juror," i.e., he evaluates the credibility of the orally-testifying witnesses and therefore their demeanor. But on a motion for a directed verdict he does not.' " Today we clarify that a judge may not repudiate a jury verdict on the ground that "he disbelieves the testimony of witnesses for the prevailing party." *People v Johnson*, 397 Mich 686, 687; 246 NW2d 836 (1976).[13]

### III

The issue whether a state trial court judge in a jury trial "may assess evidence as a '13th juror' is a question of state law." *Hudson v Louisiana*, 450 US 40, 45, n 5; 101 S Ct 970; 67 L Ed 2d 30 (1981).[14] The his-

---

[13] See *Herbert, supra* at 479 (BOYLE, J., dissenting):

In *People v Johnson*, 397 Mich 686, 687; 246 NW2d 836 (1976), this Court observed that "[a]s the trier of fact, the jury is the final judge of credibility." Unfortunately, however, the opinion in *Johnson* (hereafter *Johnson II*) and an earlier order from this Court (*People v Johnson*, 391 Mich 834 [1974]) contain language that intimates judicial oversight of the credibility decisions of trial court juries. The Court of Appeals opinion in the case resulting in the first order of this Court in *Johnson*, *People v Johnson*, 52 Mich App 385; 217 NW2d 417 (1974), was based on a finding of injustice. The order of reversal relied on the dissenting opinion in *Sloan v Kramer-Orloff Co*, 371 Mich 403, 410-412; 124 NW2d 255 (1963). The issue in *Johnson II* was the standard for dismissal of charges. Therefore, the discussion in the opinion in *Johnson* regarding credibility oversight was dicta. [BRICKLEY, J., concurred with BOYLE, J.]

[14] *Tibbs*, n 12 *supra* at 42. A reversal on the weight of the evidence does not mean that acquittal was the only proper verdict but, rather, that "the appellate court sits as a 'thirteenth juror' and disagrees with the jury's resolution of the conflicting testimony."

We note that the United States Court of Appeals for the Sixth Circuit has consistently refused to adopt this position.

toric division of functions between the court and the jury needs no citation of authority. It is the province of the jury to determine questions of fact and assess the credibility of witnesses. "As the trier of fact, the jury is the final judge of credibility." *Johnson, supra* at 687.[15] The approach that would allow a trial judge to sit as a thirteenth juror[16] and overrule the credibility determinations of the jury suggests that a judge may freely repudiate the jury's findings. Although *Johnson, supra* at 687, indicates that a trial judge

---

The court of appeals . . . does not sit as a "thirteenth juror" to judge the credibility of witnesses. Neither do we reweigh the evidence. Rather, we are limited to examining the evidence produced at trial to determine whether the district court's determination that the evidence [does or] does not "preponderate heavily against the verdict" is a clear and manifest abuse of discretion. [*United States v Ashworth*, 836 F2d 260, 266 (CA 6, 1988).]

[15] *Sheahan v Barry*, 27 Mich 217, 226 (1873)  states:

The division of functions between court and jury is one which is essential to the safe administration of justice, and a new trial will always be granted when the judge interferes with the lawful province of the jury. He has no right to take away from them the decision of any question of fact, and he cannot deprive them of the right to settle for themselves what witnesses or what testimony they will credit or discredit. This would be clearly error.

[16] For jurisdictions recognizing the thirteenth juror concept, see *Veitch v Superior Court of Santa Clara Co*, 89 Cal App 3d 722, 730-731; 152 Cal Rptr 822 (1979), *People v Ramos*, 33 AD2d 344, 347; 308 NYS2d 195 (1970), and *State v Hudson*, 373 So 2d 1294, 1298 (La, 1979)  (Tate, J., concurring); contra see *People v Noga*, 196 Colo 478, 480; 586 P2d 1002 (1978) (holding that a judge may never upset a jury verdict for the sole reason that if he were finder of fact he would have ruled otherwise), and *State v Bowle*, 318 So 2d 407, 408 (Fla App, 1975)  (holding that a trial judge is not permitted to sit as a seventh juror pitting his judgment against that of the jury). For courts subsequent to *Jackson* rejecting the concept, see *State v Kringstad*, 353 NW2d 302, 307 (ND, 1984) (holding that a trial court's discretion to grant a new trial is more restricted than the discretion implied by the thirteenth juror concept), and *United States v Rothrock*, 806 F2d 318, 322 (CA 1, 1986)  (a trial judge is not a thirteenth juror who may set aside a verdict because he would have reached a different result).

may grant a new trial because he disbelieves witness
testimony, explicit reference to the judge as thir-
teenth juror does not appear in Michigan jurispru-
dence before *Herbert*, a per curiam opinion issued
without benefit of oral argument. Having had the
advantage of oral argument, full appellate briefing,
and review of additional state and federal cases, a
better view emerges.

Appellate reluctance to interfere with the grant of a
new trial is soundly rooted in the proposition that
"[t]he judge was 'there' [w]e were not." *Adler v Flint
City Coach Lines, Inc*, 364 Mich 29, 39; 110 NW2d 606
(1961). It is also based on the pragmatic expectation
of appellate courts that the trial courts will sparingly
exercise such authority and that expansion of appel-
late oversight would simply invite an increase in
claims for review. *Spalding v Spalding*, 355 Mich 382,
384; 94 NW2d 810 (1959). That disputed issues of fact
are for the jury is a fundamental tenet of our jurispru-
dence, *Rizzo v Kretschmer*, 389 Mich 363, 371-372;
207 NW2d 316 (1973), and it is the trial judge who
presumably will bear the practical consequence of a
conclusion that a case needs to be retried.

The conundrum is that, in motions for a new trial
based on the claim that the verdict is against the
great weight of the evidence, the issue of credibility
of the witnesses is implicit in determining great
weight or overwhelming weight of that evidence.
*Sloan v Kramer-Orloff Co*, 371 Mich 403, 412; 124
NW2d 255 (1963). The problem has been addressed
by abstract formulations that caution against over-
turning verdicts and, less frequently, by an attempt to
give concrete guidance to a judge asked to review
"the whole body of proofs," which necessarily

includes an evaluation of the credibility of the witnesses. *Herbert, supra* at 475. New trial motions based solely on the weight of the evidence regarding witness credibility are not favored.[17]

This formulation of the standard is, in turn, founded on the principle that the preservation of the jury by constitutional amendment was designed as a limitation on judicial power. As Justice TAYLOR recently observed, the "special role accorded jurors under our constitutional system of justice" has been acknowledged for centuries. *People v Bart (On Remand)*, 220 Mich App 1, 12; 558 NW2d 449 (1996):

> "Now let any man of sense consider, whether this method be not more proper for bolting out the truth, for finding out the guilty, and preserving the innocent, than if the whole decision were left to the examination of a judge, or two or three, whose interests, passion, haste, or multiplicity of business may easily betray them into error." [Quoting Care, English Liberties, pp 205-209, written in 1680 (and cited in 2 Few, In Defense of Trial by Jury, p 278, published in 1993 by the American Jury Trial Foundation).]

Justice TAYLOR further observed that "the hurdle a judge must clear to overrule a jury is unquestionably among the highest in our law. It is to be approached by the court with great trepidation and reserve, with all presumptions running against its invocation." *Id.* at 13.

The thirteenth juror standard posits that the authority of the trial judge is equal to, or greater than, that of the other jurors when the court does not agree

---

[17] *United States v Thomas*, 894 F Supp 58, 63 (ND NY, 1995) (such motions are not favored and should be granted only with great caution in exceptional circumstances).

with the outcome.[18] It follows that the oft repeated statement, the "power to grant a new trial on this ground should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict," *Dorman v State*, 622 P2d 448, 454 (Alas, 1981), citing 3 Wright & Miller, Federal Practice & Procedure, § 553, pp 245-248, cannot be understood to endorse the concept of the judge as thirteenth juror. The trial judge who posits the authority to determine whether the evidence is so evenly balanced that reasonable jurors might come to different conclusions, as Justice CAVANAGH suggests, may further assume that jurors have unreasonably come to the conclusion they reached. That is why the thirteenth juror approach has a potential to undermine the jury function and why we now reject it.

Were the concept to be applied as expressed, the constitutional method for sifting out the truth, for our finding the guilty and preserving the innocent, would be " 'left to the examination of a judge, or two or three.' " To adhere to this principle and articulate a concept for resolving the conundrum of the trial court, appellate courts have narrowed the inquiry to focus on the defendant's innocence, that is, whether it would be a manifest injustice to allow the verdict to stand.[19] *United States v Polin*, 824 F Supp 542, 551

---

[18] "Such a rule would seriously intrude upon the jury's function." *State v LaDabouche*, 146 Vt 279; 502 A2d 852 (1985).

[19] See MCL 769.26; MSA 28.1096:

No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examina-

(ED Pa, 1993). Numerous federal circuits[20] and other jurisdictions have adopted similar standards: "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction," *State v Martin*, 20 Ohio App 3d 172, 175; 485 NE2d 717 (1983), or "preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred . . . ." *State v Kringstad*, 353 NW2d 302, 306 (ND, 1984).

In accord with these cases, the Vermont Supreme Court stated that a motion for a new trial in the inter-

---

tion of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.

[20] *United States v Dockray*, 943 F2d 152, 157 (CA 1, 1991) (a new trial may be granted on the basis of the great weight of the evidence if the verdict is a miscarriage of justice, the evidence preponderates heavily against the verdict, or a jury result is seriously erroneous); *United States v Sanchez*, 969 F2d 1409, 1414 (CA 2, 1992) (the discretion to grant a new trial in the interest of justice should be exercised sparingly, with great caution under extraordinary circumstances); *United States v Arrington*, 757 F2d 1484, 1486 (CA 4, 1985) (discretion should be exercised sparingly and a new trial granted only when the evidence weighs heavily against the verdict); *United States v Robertson*, 110 F3d 1113, 1120, n 11 (CA 5, 1997) (the power to grant a new trial should be exercised with caution, invoked only in exceptional cases in which the evidence preponderates heavily against the verdict); *United States v Ashworth*, n 14 *supra* (exercise of discretion to grant a new trial should be used only in extraordinary circumstances when the evidence preponderates heavily against the verdict); *United States v Lincoln*, 630 F2d 1313, 1319 (CA 8, 1980) (a new trial should be granted only where the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice occurred); *United States v Rush*, 749 F2d 1369, 1371 (CA 9, 1984) (motions for a new trial should be granted only in exceptional circumstances when the evidence preponderates heavily against the verdict); *United States v Evans*, 42 F3d 586, 593-594 (CA 10, 1994) (the power to grant a new trial on the weight of the evidence should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict); *United States v Martinez*, 763 F2d 1297, 1313 (CA 11, 1985) (motions for new trials on the basis of the weight of the evidence are not favored and should be granted sparingly and only in exceptional cases).

est of justice is a remedy to be used sparingly and
"only in exceptional cases" and "should be granted
'only upon a conclusion by the trial court that, weigh-
ing all the evidence including the credibility of the
witnesses, the verdict is clearly against the weight of
the evidence.'" *State v LaDabouche*, 146 Vt 279, 283;
502 A2d 852 (1985). The court asserted that this lan-
guage permits the inference that the trial judge does
not sit "merely as a thirteenth juror, but applies a
stricter standard," and further noted that more recent
federal cases have adopted this standard and do not
mention the thirteenth juror concept. *Id.*[21]

These observations are in full accord with the lan-
guage of our statute and court rule. Thus, "a new trial
based upon the weight of the evidence should be
granted only where the evidence preponderates heav-
ily against the verdict and a serious miscarriage of
justice would otherwise result." *LaDabouche, supra*
at 285.

IV

We align ourselves with those appellate courts
holding that, absent exceptional circumstances,
issues of witness credibility are for the jury, and the
trial court may not substitute its view of the credibil-
ity "for the constitutionally guaranteed jury determi-
nation thereof." *Sloan, supra* at 411.[22] We reiterate the

---

[21] Citing with approval, *United States v Arrington, United States v
Rush,* and *United States v Lincoln,* n 20 *supra,* and *United States v
Indelicato,* 611 F2d 376, 387 (CA 1, 1979).

[22] Criminal cases are usually fought on the battlefield of witness credi-
bility, *United States v Friedland,* 660 F2d 919, 931, n 13 (CA 3, 1981), and
this is particularly true in situations involving the credibility of a victim of
a CSC crime where the only witnesses present are the victim and the per-
petrator, with the credibility of a professed accomplice to an unwitnessed
crime, or the credibility of a coconspirator to a conspiracy, which, by its

observation in *Anderson v Conterio*, 303 Mich 75, 79;
5 NW2d 572 (1942), that, when testimony is in direct
conflict and testimony supporting the verdict has
been impeached, if "it cannot be said as a matter of
law that the testimony thus impeached was deprived
of all probative value or that the jury could not
believe it," the credibility of witnesses is for the jury.

Adding flesh to what is a more refined articulation
of the formula that " '[i]n general, conflicting testi-
mony or a question as to the credibility of a witness
are not sufficient grounds for granting a new trial,' "
*United States v Garcia*, 978 F2d 746, 748 (CA 1,
1992), quoting with approval *United States v
Kuzniar*, 881 F2d 466, 470 (CA 7, 1989),[23] federal cir-
cuit courts have carved out a very narrow exception
to the rule that the trial court may not take the testi-
mony away from the jury. *Id.* at 470-471. Defining the
exception, the federal courts have developed several
tests that would allow application of the exception;
for example, if the "testimony contradicts indisputa-
ble physical facts or laws," *id.*, "[w]here testimony is
patently incredible or defies physical realities,"

---

very nature, is a clandestine offense often known only to its members. It
is a well-established rule that a jury may convict on the uncorroborated
evidence of a CSC victim, *People v Smith*, 149 Mich App 189, 195; 385
NW2d 654 (1986), citing MCL 750.520h; MSA 28.788(8); a professed
accomplice, *People v Barron*, 381 Mich 421; 163 NW2d 219 (1968) (a jury
may convict on uncorroborated evidence of a professed accomplice); or
in federal court on the uncorroborated testimony of a coconspirator, *Peo-
ple v Martinez*, 844 F Supp 975 (SD NY, 1994). Jury decisions in these
cases are essentially based on the jury's assessment of the witnesses'
credibility. In general, the trial courts " 'must defer to the jury's resolution
of the weight of the evidence and the credibility of the witnesses,' " and
only where exceptional circumstances can be demonstrated may the trial
judge "intrude upon the jury function of credibility assessment." *United
States v Sanchez*, n 20 *supra* at 1414.

[23] See also *Marshall v United States*, 141 US App DC 1, 2, n 1; 436 F2d
155 (1970).

*United States v Sanchez*, 969 F2d 1409, 1414 (CA 2, 1992), "[w]here a witness's testimony is material and is so inherently implausible that it could not be believed by a reasonable juror," *Garcia, supra* at 748, or where the witness' testimony has been seriously "impeached" and the case marked by "uncertainties and discrepancies." *United States v Martinez*, 763 F2d 1297, 1313 (CA 11, 1985).

This does not mean that "[a] judge's disagreement with the jury's verdict," *United States v Arrington*, 757 F2d 1484, 1486 (CA 4, 1985), or a "trial judge's rejection of all or part of the testimony of a witness or witnesses," entitles a defendant to a new trial. *Sanchez, supra* at 1414. Rather, a trial judge must determine if one of the tests applies so that it would seriously undermine the credibility of a witness' testimony and, if so, is there "a real concern that an innocent person may have been convicted" or that "it would be a manifest injustice" to allow the guilty verdict to stand. *Id.* If the "evidence is nearly balanced, or is such that different minds would naturally and fairly come to different conclusions," the judge may not disturb the jury findings although his judgment might incline him the other way. *Kringstad, supra* at 307.[24] Any "real concern" that an innocent person has been convicted would arise "only if the credible trial

---

[24] The judicial mind does not always ascribe the same degree of credibility to a witness or witnesses as does the composite mind of the lay jury. Justice CAMPBELL wrote:

> Courts cannot assume that the witnesses whom they would most credit are to be followed by the jury. And however much they may be discontented with the result, they cannot usurp the functions of the jury. [*Marcott v Marquette H & O R Co*, 47 Mich 1, 7; 10 NW 53 (1881).]

evidence weighs more heavily in [the defendant's] favor than against it." *Polin, supra* at 551.

Formulaic pronouncements are less than successful in giving practical guidance to trial courts regarding when the "mystic borderline" is crossed between credibility issues that must remain with the jury and a court's authority to overturn that finding. We can state confidently that the judge is not to act as a thirteenth juror when passing on such motions. Justice CAVANAGH can state with equal assurance that the trial judge is uniquely situated "to observe the presentation of evidence in court." *Post* at 652. Neither statement defines the range of authority that remains.[25] A survey of the legal landscape, including federal authority and legal commentary, identifies the practical guidance that a trial judge seeks. Justice O'HARA in *Sloan,* instructs the trial court to answer the threshold question regarding what issue is actually posed by the motion, that is, to engage in "an evaluation of the testimony bearing on the controverted fact," *id.* at 409, to determine whether the question is one of " 'great' or 'overwhelming' weight" of the evidence or, rather, "a question of the credibility of witnesses testifying to diametrically opposed assertions of fact." *Id.* at 412.[26] Justice O'HARA suggests that, unlike Justice CAVANAGH's reference to the unique position of the trial court judge, unless it can be said that directly contradictory testimony was so far

---

[25] The prosecutor suggests that, following *Hampton,* there may be little meaningful distinction in criminal cases between the new trial standard and the standard for a directed verdict. We do not reach or adopt that position.

[26] *Bart, supra* at 12, appears to follow this method of analysis in assessing the adequacy of the reasons for granting the motion for a new trial.

impeached that it "was deprived of all probative value or that the jury could not believe it," *id.* at 410, or contradicted indisputable physical facts or defied physical realities, the trial court must defer to the jury's determination. "So concluding we must, despite any misgivings or inclinations to disagree, leave the test of credibility where our system reposed it—in the trier of the facts." *Id.* at 412. To state as does the concurrence that a trial judge sits as a thirteenth juror, that is, to "invoke this perspective sparingly," *post* at 652 is to articulate an unreviewable standard that invites judges so inclined to substitute their views for that of the jury.

V

In the instant case, the testimony of the victims was in direct conflict with that of the defendant. The defendant was effectively able to cross-examine the girls and attempt to discredit their testimony. The defendant also testified and presented his version of events to the jury. The credibility of a witness is determined by more than words and includes tonal quality, volume, speech patterns, and demeanor, all giving clues to the factfinder regarding whether a witness is telling the truth. *State v Turner*, 186 Wis 2d 277; 521 NW2d 148 (App, 1994). The jury was able to see, hear, and observe both the victims and the defendant and determine the credibility of their testimony. The jury found the defendant guilty of all the charges after viewing all the evidence and all the witnesses. The question being one of credibility posed by diametrically opposed versions of the events in question, the trial court was obligated, "despite any misgivings or inclinations to disagree," to leave the test

of credibility where statute, case law, common law, and the constitution repose it "in the trier of fact." On the record presented, the jury's evaluation was not inferior to that of the trial court.

### CONCLUSION

The reasons cited by the trial judge in the opinion before us are an inadequate basis for disturbing the jury's evaluations of credibility under the limitations of *Herbert* adopted today. Conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial. The reasons cited do not evidence that the testimony contradicts indisputable physical facts or law. Any suggestion that the testimony is patently incredible or is so inherently implausible that it could not be believed by a reasonable juror is undermined by the court's earlier conclusion that the evidence justified the conviction.

The reasons asserted by the trial judge for granting a new trial were grounded in the erroneous view that she could employ her status as a thirteenth juror to set aside the jury verdict. The trial court's duty to protect the process encompasses a duty to the defendant, to the public, and to the constitutionally guaranteed role of the jury as determiner of disputed facts. We hold that fidelity to these principles dictates that, in this category of cases, the judge does not sit as a thirteenth juror. The thirteenth juror principle is an erroneous legal standard. It does not establish that an innocent person had been found guilty, or that the evidence preponderates heavily against the verdict so that it would be a serious miscarriage of justice to permit the verdict to stand.

However, because we find that the court did not err in ordering a new trial under the erroneous thirteenth juror standard previously permitted under *Herbert*, we affirm the decision of the Court of Appeals[27] and hold that the newly adopted limitations on *Herbert* apply prospectively to cases not yet final as of the date of this decision.

MALLETT, C.J., and BRICKLEY, WEAVER, and TAYLOR, JJ., concurred with BOYLE, J.

CAVANAGH, J. (*concurring*). I agree with the majority when it holds that a trial judge may not grant a new trial solely on the basis of an evaluation " 'of the credibility of witnesses testifying to diametrically opposed assertions of fact.' " *Ante* at 645.[1] I write separately, however, because I do not find this holding inconsistent with our opinion in *Herbert*, and therefore I see no need to overrule any portion of that decision. *People v Herbert*, 444 Mich 466; 511 NW2d 654 (1993).

In *Herbert*, we held that it was error for the trial judge to conclude that he was not allowed to consider the credibility of witnesses when deciding a

---

[27] The standard of appellate review regarding a trial judge's decision to grant or deny a motion for a new trial is "entrusted to the discretion of the trial court and that decision will not be disturbed on appeal without a showing of an abuse of discretion . . . ." *People v Hampton, supra* at 373. Absent an abuse of discretion, the decision of the trial court must be affirmed. The Court of Appeals found and we agree that there was no abuse of discretion under the previously established thirteenth juror standard.

[1] As the majority explains, there are some circumstances where a witness' testimony may be so impeached or illogical that a trial judge may legitimately grant a new trial on the basis of the credibility of such a witness. *Ante* at 643-644. Moreover, a trial court may also rely on other substantial "noncredibility" evidence when deciding whether a new trial is warranted under the great weight of the evidence.

motion for a new trial.[2] In distinguishing the standard
for determining whether to grant a new trial and the
standard for directing a verdict of acquittal, we
explained that under the great weight of the evidence
standard, "a judge necessarily reviews the whole body
of proofs," which may include the credibility of wit-
nesses. *Id.* at 475.[3] In elaborating on this distinction,
we quoted the language that is at the heart of today's
opinion:

> On a motion for new trial, the judge acts "as the thir-
> teenth juror," i.e., he evaluates the credibility of the orally-
> testifying witnesses and therefore their demeanor. But on a
> motion for a directed verdict he does not. [*Dyer v MacDou-
> gall*, 201 F2d 265, 272 (CA 2, 1952) (Frank, J., concurring).]

Part of the difficulty with this case is that the "thir-
teenth juror" concept has not been well defined by
either case law or commentators. The opinion states
that under the thirteenth juror concept the authority
of the trial judge is equal to, or greater than, that of
the other jurors when "the court does not agree with
the outcome," *ante* at 639-640, and that it allows the
trial judge to "freely repudiate the jury's findings." *Id.*
at 637. The opinion characterizes the *Herbert* decision
as allowing a judge to effectively set aside a jury ver-
dict any time the judge would hold otherwise. I disa-

---

[2] Under today's decision, this would still be the case. The majority does
not eliminate the consideration of witness credibility by the trial judge.
Rather, it clarifies the standard a trial judge must use when deciding
whether to grant a new trial on the basis of the credibility of a witness
alone.

[3] In contrast, a motion for a directed verdict requires the trial judge to
consider the evidence in a light most favorable to the prosecution. In that
instance, a judge must not evaluate the credibility of witnesses. *Id.* at 475,
n 14.

gree with this characterization of the thirteenth juror concept.[4]

Referring to the trial judge as the "thirteenth juror" is an analogy to the trial judge's unique position to view the evidence and the witnesses in court. Unlike an appellate judge, the trial judge sits alongside the jury and is able to form opinions with respect to the strengths and weaknesses of the respective party's cases.[5] However, this does not mean that the trial judge acts like a juror or orders a new trial every time the judge disagrees with the jury's conclusions. As explained in *Williams v City of Valdosta*, 689 F2d 964, 973, n 7 (CA 11, 1982):

> "There are statements in the cases that, in ruling on the motion, the trial judge acts as a 13th juror. Properly understood and applied, no fault can be found with them for the judge does act to evaluate and weigh the evidence. But while he has a responsibility for the result no less than the jury, he should not set the verdict aside as against the weight of the evidence merely because, if he had acted as trier of the fact, he would have reached a different result; and in that sense he does not act as a 13th juror in approving or disapproving the verdict. *And since the credibility of witnesses is peculiarly for the jury,* it is an invasion of the jury's province to grant a new trial merely because the evidence was sharply in conflict." [Quoting Moore's Federal

---

[4] The majority cites three cases as examples of jurisdictions "recognizing the thirteenth juror concept." *Ante* at 637, n 16. However, the term "thirteenth juror" does not appear anywhere in these three decisions. See *Veitch v Superior Court of Santa Clara Co*, 89 Cal App 3d 722, 730-731; 152 Cal Rptr 822 (1979), *People v Ramos*, 33 AD2d 344, 347; 308 NYS2d 195 (1970), and *State v Hudson*, 373 So 2d 1294, 1298 (La, 1979) (Tate, J., concurring). Thus, none of these cases appropriately describes the thirteenth juror analogy or the standard we adopted in *Herbert*.

[5] "The judge sees the witnesses, hears the testimony, and has a special perspective of the relationship between the evidence and the verdict which cannot be recreated by a reviewing court from the printed record." *Reeves v Markle*, 119 Ariz 159, 163; 579 P2d 1382 (1978).

Practice, ¶ 59.08[5], pp 59-158 to 159    (emphasis in original).]

*Herbert* specifically states that review of a jury's verdict under the great weight of the evidence standard is to be undertaken "mindful of the special role accorded jurors under our constitutional system of justice." 444 Mich 477. I see today's opinion not as overturning this portion of *Herbert*; rather, today's opinion gives substance to the meaning of the "special role accorded jurors under our constitutional system of justice." Indeed, other jurisdictions using the thirteenth juror analogy have limited a trial court's discretion to grant a new trial in a manner similar to the limitations adopted today. As stated by the Supreme Court of Rhode Island:

> [T]he trial justice must act as a thirteenth juror, exercising his or her independent judgment on the credibility of witnesses and on the weight of the evidence. If, after this analysis, the trial justice disagrees with the verdict of the jury, he or she must then determine whether the evidence is so evenly balanced that reasonable minds might fairly come to differing conclusions. If he or she finds the evidence so evenly balanced, then he or she should defer to the findings of the jury. [*State v Warren*, 624 A2d 841, 843 (RI, 1993) (citations omitted).][6]

---

[6] See also Seward, *The sufficiency-weight distinction—A matter of life or death*, 38 U Miami L R 147, 154-155 (1983):

> There is, however, a caveat to the application of the "thirteenth juror" analogy since the standard for upsetting a jury verdict is very strict. It has been argued that allowing the judge to reverse a conviction based upon the weight of evidence permits the judge to usurp a function traditionally within the province of the jury. By invading the province of the jury, the judge then becomes the real trier of fact. Recognizing this danger, courts must use caution when reweighing evidence. Accordingly, courts reversing a jury verdict based upon the weight of evidence couch their decisions in

It is for these reasons that I disagree with the majority's conclusion that "[t]he thirteenth juror standard posits that the authority of the trial judge is equal to, or greater than, that of the other jurors when the court does not agree with the outcome." *Ante* at 639-640. The term "thirteenth juror" does not mean that the trial judge substitutes personal judgment for that of the jury; rather, it refers to the trial judge's unique position, enabling the judge to observe the presentation of evidence in court. Thus, it is entirely consistent to say that a trial judge sits as a thirteenth juror when evaluating the weight of the evidence presented at trial, but that the judge should invoke this perspective sparingly when granting a new trial on the basis of the great weight of the evidence. In short, I believe the holding of the majority is further elaboration of our statement in *Herbert*, and, therefore, it is unnecessary to overrule any portion of that opinion.

KELLY, J., concurred with CAVANAGH, J.

---

terms of "exceptional cases," "preventing injustice," or the "evidence preponderating heavily against the verdict." [Citations omitted.]