# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
November 27, 2018

v

No. 338927
Livingston Circuit Court
LC No. 17-024103-FH

WILLIAM ELLIS WATT,

Defendant-Appellant.

Before: RIORDAN, P.J., and RONAYNE KRAUSE and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial conviction of domestic violence, third offense, MCL 750.81(2); MCL 750.81(4). We affirm.

## I. FACTS

Defendant's conviction arose from an altercation involving his then 18-year-old daughter CW in their family home. CW's mother, Cathey Watt, and her brother, Billy Watt, also lived in the family home. CW[1] testified that on the morning of September 24, 2016, she and Billy got into a physical altercation. During the altercation, Billy threw a water bottle at her, which caused an injury that left a visible scar on her nose. CW left the home and went to her sister's house before her shift at work began. CW testified that she returned to her family home later that night, and "[she] went to the kitchen, and [] opened the fridge [because she had] [] leftovers in there." Defendant and Cathey "ma[de] a comment" about why she was eating "[their] food" and told CW to "get out of [the] fridge." CW swore at Cathey and defendant, which angered defendant. CW testified that defendant "ended up slapping [her]" and "[f]orcefully grabbed [her] face" and "squeezed" it. CW left the house and realized her tire was flat. She believed Billy had slashed her tire because of "what else happened to [her] that day."[2] A couple hours later CW called the police and filed a complaint against defendant for slapping her and forcefully grabbing her face.

---

[1] Because numerous individuals share their last names, we will refer to them by their first names and the victim by her initials.

[2] This comment referenced the physical altercation between CW and Billy that occurred the morning of September 24, 2016.

CW further testified that after criminal charges were filed against defendant, Cathey asked CW multiple times to "contact the court to see if [she] [could] get the charges dropped." CW believed she "ha[d] no authority to do that" so she "just ignored" Cathey.

Cathey's testimony largely contradicted CW's testimony. Cathey testified that CW left the house around 1:00 or 1:30 p.m. on September 24, 2016, and that CW did not come home until around 3:00 or 3:30 p.m. the next day. Cathey also testified that defendant was "extremely weak, nauseous, [and] vomiting" and "wasn't capable of anything" on September 24, 2016, due to chemotherapy. Cathey further testified that she merely told CW to contact the prosecution to tell the truth about what happened.

## II. DISCUSSION

### A. SUFFICIENCY OF THE EVIDENCE

Defendant first argues on appeal that the prosecution presented insufficient evidence to support his conviction. We review de novo a claim of insufficient evidence. *People v Cline*, 276 Mich App 634, 642; 741 NW2d 563 (2007). When reviewing the sufficiency of the evidence in a criminal case, the test is whether the evidence, when viewed in a light most favorable to the prosecution, is sufficient for a reasonable fact-finder to find each element of the crime beyond a reasonable doubt. *People v Nowack*, 462 Mich 392, 399-400; 614 NW2d 78 (2000); *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). A reviewing court must "draw all reasonable inferences and make credibility choices in support of [] the verdict." *Nowack*, 462 Mich at 400. On appeal, this Court does not reevaluate the credibility of the witnesses or the evidence. *Wolfe*, 440 Mich at 514-15. Circumstantial evidence and reasonable inferences drawn therefrom can be enough to establish each element of the crime; therefore, direct evidence is not required. *Nowack*, 462 Mich at 400.

MCL 750.81(2) provides that "[(1)] an individual who assaults or assaults and batters . . . [(2)] a resident or former resident of his or her household, is guilty of" domestic assault.

In this case, sufficient evidence supported the trial court's finding that defendant was guilty of a domestic violence against CW. Defendant argues that CW's testimony was not credible because she often stated she did not remember what happened, she had to be reminded of her preliminary examination testimony, she was "wishy washy and non committal [sic]," and she "had an attitude problem." However, the trial court heard CW's and Cathey's inconsistent accounts of September 24, 2016. The trial court acknowledged that there were some issues with CW's testimony and demeanor; nonetheless, it found her testimony to be credible and Cathey's testimony not to be credible. Because the trial court found CW's testimony credible that defendant slapped her and "squeezed" her face, and it occurred while she resided in the same household as defendant the required elements under MCL 750.81(2) were fulfilled. Therefore, defendant's claim that the evidence was insufficient to convict him fails.

### B. GREAT WEIGHT OF THE EVIDENCE

Defendant also argues that the verdict was against the great weight of the evidence. A verdict is against the great weight of the evidence when "the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People*

*v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009). Generally, this Court may vacate a verdict "only when the evidence does not reasonably support it and it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence." *Id*.

Witness credibility is "implicit" in making a determination about whether a verdict is against the great weight of the evidence. *People v Lemmon*, 456 Mich 625, 638; 576 NW2d 129 (1998). This Court does not substitute its view on the issue of witness credibility for that of the fact-finder "absent exceptional circumstances." *Id*. at 642. When "testimony is in direct conflict and testimony supporting the verdict has been impeached," we leave the determination of witness credibility to the fact-finder if "it cannot be said as a matter of law that the testimony thus impeached was deprived of all probative value . . . " *Id*. at 643 (quotation marks and citation omitted). "Conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial." *Id*. at 647.

Here, defendant argues that the verdict was against the great weight of the evidence because CW's testimony was not credible. Again, it is true that there is a conflict between CW's and Cathey's versions of the events that transpired on September 24, 2016. Defense counsel impeached CW by pointing out inconsistencies between her testimony at the preliminary examination and at trial, and by questioning the timing of when she actually called the police. However, none of these inconsistencies deprived CW's testimony of all probative value. See *Lemmon*, 456 Mich at 645-46. The trial court found that CW's version of events was credible and Cathey's version of events was not credible, and we must defer to the trial court's assessment of witness credibility. See *id*. at 643. Because CW's testimony supported a conviction under MCL 750.81(2), and the trial court found her testimony credible, defendant's conviction was not against the great weight of the evidence.

## III. CONCLUSION

Defendant's conviction for domestic violence is affirmed.

/s/ Michael J. Riordan
/s/ Amy Ronayne Krause
/s/ Brock A. Swartzle