*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

DOMINIQUE WHITE,

        Defendant-Appellee.

UNPUBLISHED
February 17, 2022

No. 352622
Wayne Circuit Court
LC No. 19-006233-01-FC

Before: RICK, P.J., and MURRAY and SHAPIRO, JJ.

PER CURIAM.

Following a jury trial defendant was convicted of armed robbery, MCL 769.11. At sentencing, the trial court sua sponte entered a judgment of acquittal on the basis that the complainant was not a credible witness. The prosecution appeals as of right, and we reverse and remand for reinstatement of the jury's verdict.

## I. BACKGROUND

The complainant, Roosevelt Harris, and defendant both testified at trial and presented drastically different versions of events. Harris and defendant had known each other for about eight years. Harris testified that on April 16, 2019, at about 7:00 p.m. he drove his vehicle to State Fair Avenue in Detroit, between Gratiot Avenue and Anvil Avenue, to give defendant money to give to "Squardo," i.e., Cory Jenkins, who was incarcerated at the time. According to Harris, when he arrived defendant directed him by phone to a house on the corner of the street and he parked in front of a black Explorer. Defendant then entered Harris's vehicle and spoke with him. A few minutes later, a man approached the rear driver's side door of the vehicle and defendant told Harris that the man was her brother. Harris unlocked the door and the man entered the back seat behind the driver's seat. Shortly after, a second man approached the rear passenger door of the vehicle and got in the back seat of the vehicle, behind defendant. Harris testified that when he looked toward the back seat, the second man pointed a black and silver handgun at his face and said to "give him everything" he had. Harris also felt the other man press a gun to his back. Harris said that he asked defendant why she was doing this, and she told him to "shut your p**** a** up and give me everything." Harris testified that defendant searched his pockets and took his cell phone,

-1-

wallet and $140 in cash. Defendant and the two men exited Harris's vehicle and got into the parked Explorer, and Harris drove to a nearby police station and filed a police report at 7:57 p.m.

Defendant testified in her defense at trial and denied any involvement in the alleged robbery. She testified that she met with Harris at the time in question so that she could buy marijuana from him "on credit" because she did not have any money. According to defendant, Harris agreed to sell her marijuana on credit, but "also wanted something else, as far as sexual."[1] Defendant testified that usually she would agree to Harris's request, but on this occasion, she was busy at a party at Hines Park, which is located at Joann Street and State Fair Avenue. Defendant said that she directed Harris to a location near the park and when he arrived she entered his vehicle and they smoked marijuana. Defendant said that at some point Harris sold marijuana to two men that had walked past his vehicle. A few minutes later, Harris received a phone call and told defendant that he had to leave. Defendant exited Harris's vehicle and he left. Defendant believed the entire interaction with Harris to be about 25 minutes. She stated that she later received text messages from Harris indicating that he was upset about money.

The investigating officer, Detroit Police Detective Devin Brown, testified that she went to the area described by Harris but did not find any witnesses to the incident or cameras in the area, and she did not obtain cell phone or messenger records. Thus, Harris's testimony was the only evidence against defendant, and by finding defendant guilty of the charged offense, the jury necessarily determined that Harris's testimony regarding the armed robbery was credible.

The trial court adjourned defendant's initial sentencing hearing, explaining that it wanted to review the trial transcript. When defendant's sentencing hearing resumed a few weeks later, the court granted "a judgment of acquittal notwithstanding the guilty verdict of the jury." The court determined that the case was based solely on Harris's testimony and that, under *People v Lemmon*, 456 Mich 625; 576 NW2d 129 (1998), it would substitute its view of Harris's credibility for that of the jury. The court stated that "[i]f ever there was a case where the sole evidence was impeached and discredited, it is this one," and then proceeded to cite inconsistencies in Harris's testimony regarding when he met defendant, the location of the black Explorer, the amount of money stolen, and his actions after the incident. The trial court concluded:

> [I]t's clear that [Harris] had a motive to fabricate this whole matter, because [defendant] had smoked his marijuana for free and then was unwilling to pay for it with a sexual favor. That's what led to this testimony that was heard by a jury in front of me.
>
> Again, it would be a miscarriage of justice to send [defendant] to a state prison and so I enter a judgement of acquittal notwithstanding the verdict of the jury.

The court issued an order directing a verdict of acquittal of the armed robbery conviction.

---

[1] Defendant testified that she and Harris had begun a periodic sexual relationship about two years prior, but Harris denied ever having a dating or sexual relationship with defendant.

## II. ANALYSIS

## A. DIRECTED VERDICT

In arguing that the trial court erred by entering an order of acquittal, the prosecution contends on appeal that: the court did not have authority under the court rules to sua sponte grant a directed verdict after the jury returned a guilty verdict; the court conflated the different standards for a new trial and a directed verdict; and the court erred by relying on *Lemmon* because that case concerned a motion for a new trial, not an order of acquittal. We decline to address these matters, however, because we conclude that, aside from any procedural deficiency, this is not one of the rare cases where a trial court may overrule the jury's credibility determination.[2]

Generally, it is the jury's function to weigh the competing evidence and assess the credibility of the witnesses. *People v Unger*, 278 Mich App 210, 228-229; 749 NW2d 272 (2008). Absent exceptional circumstances, a reviewing court may not substitute its view of the credibility of witnesses for that of the jury. *Lemmon*, 456 Mich at 642. Exceptional circumstances include when the testimony contradicts indisputable physical facts or laws, is patently incredible, defies physical realities, is so implausible that it could not be believed by a reasonable juror, or when the testimony has been seriously impeached and the case is marked by uncertainties and discrepancies. *Id.* at 643-644. But even "when testimony is in direct conflict and testimony supporting the verdict has been impeached, if it cannot be said as a matter of law that the testimony thus impeached was deprived of all probative value or that the jury could not believe it, the credibility of witnesses is for the jury." *Id.* at 643 (quotation marks and citation omitted).

To begin, many of the discrepancies in Harris's testimony cited by the trial court are relatively minor. For instance, while Harris told the police that defendant came out of the house when he arrived to see her, he testified at trial that he first saw defendant at the corner when he arrived at the house. Harris also testified that he was robbed of $140, which was corroborated by Detective Brown's testimony. But Harris initially told the police that $200 had been taken from him. His explanation at trial for this discrepancy was that the $140 that was taken from him did not include the $40 that he gave to defendant, presumably to give to Jenkins. In any event, it is clear that these minor inconsistencies do not render Harris's testimony patently incredible or so implausible that it could not reasonably be believed.[3]

---

[2] "When reviewing a trial court's decision on a motion for a directed verdict, this Court reviews the record de novo to determine whether the evidence presented by the prosecutor, viewed in the light most favorable to the prosecutor, could persuade a rational trier of fact that the essential elements of the crime charged were proved beyond a reasonable doubt." *People v Werner*, 254 Mich App 528, 530; 659 NW2d 688 (2002) (quotation marks and citation omitted).

[3] We note that the trial court made comments at sentencing indicating that Harris gave inconsistent testimony regarding the black vehicle that was present when he arrived at the house to meet defendant. However, Harris consistently testified that he parked in front of a black Explorer parked on the street.

The trial court also relied on Harris not being able to provide Jenkins's real name after 19 years of allegedly close friendship. At trial, Harris initially referred to his longtime friend as "Squardo" and denied knowing that person's real name. Later, Harris had the following exchange with the prosecutor:

> *Q*. Okay. Now, you're talking about this person named Cory Jenkins, was that his name?
>
> *A*. That his name?
>
> *Q*. I'm asking you.
>
> *A*. I don't know.
>
> *Q*. This—is that the person that you're referring to as Squardo?
>
> *A*. Yes. We call him Squardo.

On cross-examination, when defense counsel asked Harris how long he had "known that friend," Harris responded, "I be knowing Cory since . . . I was like 12." Based on this testimony, it is plausible that Harris denied knowing Jenkins's name in an attempt to not involve his incarcerated friend in the criminal proceedings. But once Jenkins's name was placed on the record, Harris freely referred to him as "Cory." Regardless, it is difficult to see how this discrepancy had any bearing on the issues at trial. It would be one thing if the defense was contending that "Squardo" was not an actual person but rather someone made up by Harris. However, it was undisputed at trial that Harris and defendant knew each other through Jenkins. Accordingly, this testimony concerned an ancillary matter and does not constitute an "exceptional circumstance" as described in *Lemmon*.

Perhaps the most substantial inconsistency concerns the actions Harris took after the robbery. Harris testified at trial that after the robbery he drove away when defendant and the two men got out of his vehicle. Yet Harris told the police that after the robbery he ran from his car and hid, waiting for defendant and the two men to leave before he got back in his vehicle. Harris testified that what he meant in his police statement was that he ran away "in my car." We agree with the trial court and defendant that this is not a convincing explanation for the discrepancy. Nonetheless, the jury was free to believe Harris's testimony in whole or in part, *Unger*, 278 Mich App at 222, and the inconsistency as to what occurred after the robbery does not contradict Harris's testimony as to the robbery itself. Indeed, the trial court failed to consider that Harris testified consistently at trial and the preliminary examination that he was robbed at gunpoint of his wallet, cash, and cell phone by defendant and two unknown males, who then fled in a black Explorer. Moreover, the jury also heard defendant's competing testimony, which it rejected. See *Lemmon*, 456 Mich at 646-647 ("The question being one of credibility posed by diametrically opposed versions of the events in question, the trial court was obligated, despite any misgivings or inclinations to disagree, to leave the test of credibility . . . in the trier of fact.").

In sum, the trial court erred by entering an order of acquittal grounded on its view of Harris's credibility. The jury heard competing versions of events from Harris and defendant. The inconsistencies in Harris's testimony—many of which were minor or inconsequential—were

brought out during trial and highlighted for the jury by defense counsel. Nonetheless, the jury found Harris credible and defendant not credible. There were not exceptional circumstances in this case that would allow the trial court to substitute its views of the credibility of the witnesses for that of the jury.

We remand for the trial court to reinstate the jury's verdict. Our decision is without prejudice to defendant's appeal rights following the judgment of sentence or to defendant filing a motion for a new trial as permitted by courts rules on some ground other than Harris's credibility.

## B. REASSIGNMENT

The prosecution also argues that defendant's sentencing hearing should be reassigned to a different trial judge. We disagree.

Michigan courts recognize that the same judge who presided over a defendant's trial should normally sentence the defendant, if reasonably available to do so. See *People v Humble*, 146 Mich App 198, 200; 379 NW2d 422 (1985). The reason for having the trial judge preside over sentencing is to ensure that the sentence "is tailored to fit the particular circumstances of the case and the offender" as established at trial. *People v Pierce*, 158 Mich App 113, 115-116; 404 NW2d 230 (1987). Nonetheless, we may reassign to a different judge for sentencing when "it would be unreasonable to expect the trial judge to be able to put out of his mind his previously expressed views and findings without substantial difficulty." *People v Weathington*, 183 Mich App 360, 362; 454 NW2d 215 (1990) (quotation marks and citation omitted). In determining whether to remand the case to a different judge, we consider:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness. [*People v Hill*, 221 Mich App 391, 398; 561 NW2d 862 (1997) (quotation marks and citation omitted).]

The prosecution contends that the trial judge will be unable to rule fairly if asked to sentence defendant within the sentencing guidelines because of the trial judge's comments and strongly expressed negative views of Harris's credibility and the jury's guilty verdict. We see no basis to conclude, however, that the trial judge would have difficulty putting aside his previously expressed findings. The fact that a trial judge's ruling was reversed, or that the trial judge indicated that the effect of a reversal would be difficult to accept, does not require disqualification on remand. See *People v Page*, 83 Mich App 412, 419-420; 268 NW2d 666 (1978). Moreover, a trial judge's remarks made during trial that are critical of the parties or their cases do not ordinarily establish disqualifying bias. *People v Jackson*, 292 Mich App 583, 598; 808 NW2d 541 (2011). Rather, "a trial judge is presumed to be impartial, and the party asserting partiality has a heavy burden of overcoming that presumption." *People v Wade*, 283 Mich App 462, 470; 771 NW2d 447 (2009). Because the prosecution fails to sufficiently establish that the trial judge will have difficulty setting aside his previously expressed views, we deny the request for a different judge to preside over defendant's sentencing.

## III. CONCLUSION

Reversed and remanded to reinstate the jury's verdict.  We do not retain jurisdiction.

/s/ Michelle M. Rick
/s/ Christopher M. Murray
/s/ Douglas B. Shapiro