*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

　　　　　Plaintiff-Appellee,

v

SARANTAY DEVON HOUSTON,

　　　　　Defendant-Appellant.

UNPUBLISHED
May 7, 2019

No. 339254
Wayne Circuit Court
LC No. 16-008127-01-FH

Before: STEPHENS, P.J., and GADOLA and LETICA, JJ.

PER CURIAM.

Defendant appeals by right from his jury trial convictions of assault with intent to commit great bodily harm less than murder, MCL 750.84, felon in possession of a firearm, MCL 750.224f, carrying a concealed weapon, MCL 750.227, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. He was sentenced as an habitual offender, third offense, MCL 769.11, to serve concurrent prison terms of 7 to 20 years for the assault conviction, 3 to 10 years for the felon in possession of a firearm conviction, and 3 to 10 years for the carrying a concealed weapon conviction, and to serve a consecutive two-year term for the felony-firearm conviction. We affirm.

## I. BACKGROUND

On June 6, 2015, around 2:00 a.m., Tyrone Powell was leaving Theresa's Bar when he accidently bumped into the defendant in the parking lot. Defendant shoved him and Powell shoved back. Defendant then lifted up his shirt to display a weapon and Powell began to back away. A second man hit Powell on the head from behind. A chase ensued during which Powell heard from seven to ten shots. He looked behind him and saw defendant shooting at him. Powell was shot twice and fell to the ground. About five other men caught up with Powell and started stomping, punching, and kicking him while he was on the ground. Defendant was among this group. The assault eventually stopped and Powell was taken to the hospital by a friend where he was treated for a fractured eye socket, fractured femur and contusions to the head.

At trial, Powell made a definite and positive identification of defendant as the shooter. In addition, the forensic scientists at the Michigan State Police Forensic Science Division were able

to match the casings found at the scene of the shooting to a pistol connected to defendant that was retrieved under a search warrant in an unrelated case. Defendant presented five alibi witnesses, mostly family members, who testified that, at the date and time of the shooting, they were at a birthday party with defendant. An alibi witness also revealed that a family cousin lived at the residence where the pistol was found beneath a mattress in an upstairs bedroom, and family, including defendant, had often partied there.

Defendant's appellate attorney filed a motion for new trial in the trial court, claiming ineffective assistance of counsel on the ground that defendant's trial attorney did nothing to prevent the admission of the recovered pistol and shell casings, which were key to the prosecutor's case, or to question the prosecution's expert forensic witness concerning the methods used to match the shell casings to the pistol. Defendant argued that his trial attorney should have requested a *Daubert*[1] hearing to challenge the methods used by the witness in the tool mark analysis and should have called an expert witness to dispute the reliability of firearm testing and tool mark identification. Defendant provided several reports and articles attached to his brief in support of his motion for new trial, which addressed and questioned the reliability of tool mark analysis. Defendant named a potential expert witness and requested $1,500 to pay witness fees and a *Ginther*[2] hearing. Defendant also moved for remand in this Court and we denied the motion.

At the hearing on the defendant's motion for new trial, the trial court acknowledged that firearms and tool mark identification had been "criticized" but noted it had not been "debunked yet." The court found that it was unclear whether cross-examination would have produced any evidence to dispute the expert's findings and that the expert proffered by defendant's appellate attorney had "been sort of compromised in a lot of situations" and would have suffered "his own credibility issues." But, most importantly, the court found that, even if the trial attorney had been mistaken to put "all of his money" on the alibi defense—"and I'm not even sure it was a mistake"—it would not have been outcome determinative. The court opined that, even if defendant could have found an independent expert "with less taint than the one you mentioned," the best that could have happened would be that some doubt could have been raised in the minds of the jury. "But you still have the victim positively identifying the Defendant as the shooter" and the "extraordinary coincidence" that the person Powell identified "just happens to be the guy that owns the gun that . . . fired these shots." The court found that Powell's positive identification "nailed the case." The court denied defendant's motion.

## II. MOTION FOR A NEW TRIAL

### A. STANDARD OF REVIEW

This Court reviews a trial court's decision to grant or deny a motion for new trial for an abuse of discretion. *People v Cress*, 468 Mich 678, 691; 664 NW2d 174 (2003). "An abuse of

---

[1] *Daubert v Merrell Dow Pharm, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993).

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). A trial court's factual findings are reviewed for clear error. MCR 2.613(C). "A finding is "clearly erroneous" when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been made." *People v Goss*, 89 Mich App 598, 601; 280 NW2d 608 (1979). "A motion for a new trial may be granted on any ground which would support appellate reversal of a conviction or because the verdict resulted in a miscarriage of justice. MCR 6.431(B)." *People v Jones*, 203 Mich App 74, 80; 512 NW2d 26 (1993).

## B. ANALYSIS

On appeal, defendant contends that the trial court erred and abused its discretion when it denied his motion for a new trial based on ineffective assistance of counsel. Defendant argues that trial counsel was ineffective in failing to request a *Daubert* hearing to challenge the science and method of tool mark identification presented by forensic scientist Rebecca Smith as unreliable, to cross-examine Smith, and to consult with a tool mark expert for the defense.

The purpose of a *Daubert* hearing is to determine whether expert testimony is admissible under MRE 702. "MRE 702 requires the trial court to ensure that each aspect of an expert witness's proffered testimony--including the data underlying the expert's theories and the methodology by which the expert draws conclusions from that data--is reliable." *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 779-780; 685 NW2d 391 (2004).

"Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). Further, counsel is not required to present "for every prosecution expert an equal and opposite expert from the defense" to be effective. *Harrington v Richter*, 562 US 86, 111; 131 S Ct 770; 178 L Ed 2d 624 (2011). "[T]he failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Kelly*, 186 Mich App 524, 526; 465 NW2d 569 (1990).

We find that the trial court did not abuse its discretion or clearly err when it found trial counsel's decision to not cross-examine the ballistics expert or present an expert who would question the reliability of the forensic evidence did not deprive defendant of the effective assistance of counsel. Had a *Daubert* hearing been held, the prosecution would have had to "establish that the testimony is reliable by showing that it is based on sufficient facts or data, that it is the product of reliable principles and methods, and that the proposed expert witness has applied the principles and methods reliably to the facts of the case." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008) (quotation marks and citation omitted). The forensic science of tool mark analysis has been a recognized method of ballistics testing for decades. The fact that some scientists and legal scholars have questioned the reliability of making a positive connection between bullet casings and a specific gun does not disqualify an expert in forensic science from demonstrating a match. Nor does the supplemental information provided by

defendant regarding firearms and ballistics analysis prove that Smith's "opinions were unreliable, inadmissible, or based on 'junk science.'" *Id*. at 220.

We also find that defense counsel's decision not to cross-examine Smith was sound trial strategy, where Smith's overall testimony was short, and any cross-examination by defense counsel would have drawn attention to the issue of the matching ballistics before the jury. See *People v. Bahoda*, 448 Mich. 261, 287 n 54; 531 NW2d 659 (1995). In this case, defendant also cannot demonstrate that but for counsel's errors, the outcome of the proceeding would have been different in light of Powell's positive identification of defendant as his shooter. Thus, the best that could be achieved by a defense expert would be to cast some doubt about the science, which would not be sufficient to change the outcome of the trial.

The fact that defendant's trial counsel chose to present defendant's alibi defense, instead of challenging the ballistic expert testimony, was a matter of trial strategy for which counsel had wide discretion. The fact that the defense was ultimately unsuccessful did not mean that counsel was ineffective at trial. See *People v Kevorkian*, 248 Mich App 373, 414-415; 639 NW2d 291 (2001). The jury found that defendant's alibi witnesses were not credible, which was in its province to do. *People v Lemmon*, 456 Mich 625, 636-637; 576 NW2d 129 (1998). Defendant cannot overcome the presumption that trial counsel's decisions concerning the forensic evidence constituted sound trial strategy. Defendant has failed to demonstrate that his counsel's performance fell below an objective standard of reasonableness so as to deprive him of a fair trial. Therefore, the trial court did not abuse its discretion or clearly err in denying defendant's motion for a new trial based on ineffective assistance of counsel.

## III. GREAT WEIGHT OF THE EVIDENCE

### A. STANDARD OF REVIEW

Defendant did not raise this issue in his motion for a new trial. Therefore, it is not preserved for appeal. *People v Lopez*, 305 Mich App 686, 695; 854 NW2d 205 (2014). Our review of the issue is thus limited to plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999); *People v Musser*, 259 Mich App 215, 218; 673 NW2d 800 (2003).

### B. ANALYSIS

Defendant contends that the jury's verdict should not be allowed to stand because it was against the great weight of the evidence. We disagree. "[A] trial court may grant a motion for a new trial based on the great weight of the evidence only if the evidence preponderates heavily against the verdict so that it would be a miscarriage of justice to allow the verdict to stand." *People v Gadomski*, 232 Mich App 24, 28; 592 NW2d 75 (1998). "A verdict may be vacated only when it does not find reasonable support in the evidence, but is more likely to be attributed to causes outside the record such as passion, prejudice, sympathy, or some extraneous influence." *People v DeLisle*, 202 Mich App 658, 661; 509 NW2d 885 (1993) (quotation marks and citation omitted).

"Conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial." *Lemmon*, 456 Mich at 647. "[U]nless it can be said that directly

contradictory testimony was so far impeached that it was deprived of all probative value or that the jury could not believe it, or contradicted indisputable physical facts or defied physical realities, the trial court must defer to the jury's determination." *Id*. at 645-646 (quotation marks and citation omitted). The resolution of credibility questions is within the exclusive province of the jury. *People v Lacalamita*, 286 Mich App 467, 470; 780 NW2d 311 (2009). Where the evidence is conflicting, it is for the jury to decide what weight to assess to the evidence and to evaluate these discrepancies and determine the credibility of the testimony. *People v Marji*, 180 Mich App 525, 542; 447 NW2d 835 (1989).

Upon review of the record, we find that, although Powell's testimony was contradicted by the alibi witnesses, it cannot be said that his testimony was so far impeached that it "was deprived of all probative value or that the jury could not believe it," or that it "contradicted indisputable physical facts or defied physical realities." *Lemmon*, 456 Mich at 645-647. The prosecutor was able to attack the credibility of the alibi witnesses by showing that defendant's mother, his cousins, his brother, his girlfriend and the other alibi witnesses all were consistent about the time and date of the party that occurred on the night of the shooting but could not remember when they first heard defendant was arrested and could not explain why they did not tell the police that defendant was with them at the time in order to have the charges dropped. In addition, almost all the alibi witnesses testified that they were not familiar with the neighborhood where the gun was found in a house pursuant to an unrelated search warrant and did not know anyone who lived on that street. Then defendant's brother testified that their cousin lived in the house where the gun was found and they all, including defendant, had visited that house before and partied there. The jury found Powell more credible than the alibi witnesses.

The tool mark evidence also reasonably supported the verdict. Defendant's three convictions stemmed from the use of a firearm. Powell's testimony established that defendant brandished a firearm and then shot him with it. Cartridge cases were collected from the scene of the shooting and turned over to Smith for analysis. Smith determined that the cases were all from the same firearm. The cases matched the firearm seized from under a mattress in a home where circumstantial evidence supported the defendant frequented. Powell's positive identification and the circumstantial evidence linking defendant to the firearm supported the jury's verdict.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

### A. STANDARD OF REVIEW

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "A judge first must find the facts, and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *Id*. "This Court reviews for clear error the trial court's factual findings and reviews de novo questions of law." *People v Thorne*, 322 Mich App 340, 347; 912 NW2d 560 (2017), app den 503 Mich 873; 917 NW2d 634 (2018). "When, as in this case, an evidentiary hearing has not been held, our review is limited to mistakes apparent from the record." *Id*.

## B. ANALYSIS

Defendant claims that he was denied the effective assistance of trial counsel when counsel failed to seek funds for or consult with an eyewitness identification expert and failed to object to the scoring of 25 points for offense variable (OV) 3.

To prove ineffective assistance of counsel, defendant "must establish (1) the performance of [her] counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." *People v Sabin (On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000). Counsel is presumed to be effective and a defendant must overcome the strong presumption that his attorney's actions were sound trial strategy. *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000). This Court will not substitute its judgment for that of counsel regarding matters of trial strategy. *People v Meissner*, 294 Mich App 438, 460; 812 NW2d 37 (2011). "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). "[T]he failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *Dixon*, 263 Mich App at 398. "A substantial defense is one that might have made a difference in the outcome of the trial." *Kelly*, 186 Mich App at 526.

### 1. EYEWITNESS IDENTIFICATION EXPERT

Defendant argues that he was denied the effective assistance of counsel when his attorney failed to consult or seek funds from the court to hire an expert witness in eyewitness identification. This claim was not raised in defendant's motion for new trial. Therefore, it is not preserved for appeal. *Polkton Charter Twp v Pellegrom*, 265 Mich App 88, 95; 693 NW2d 170 (2005). Unpreserved claims of ineffective assistance of counsel are reviewed for errors apparent on the record. *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973). Appellate courts will consider claims of constitutional error for the first time on appeal when the alleged error could have been decisive of the outcome. *People v Grant*, 445 Mich 535, 547; 520 NW2d 123 (1994).

At trial, Powell testified that he had picked out defendant as the person who shot him within three seconds of seeing the photo array. Powell identified defendant in court as the person who shot him. He testified that, at the crime scene, he was in the middle of the parking lot, facing defendant, for about 20 seconds before he got hit in the back of the head by another man. The parking lot was lit, and he did not have any problem seeing defendant's face. Defendant did not have a hoodie on or anything covering his face. After Powell started to run away, the shooting began and he turned back and saw that defendant and another man were shooting at him. Powell had never seen defendant before or heard defendant's name. On cross-examination, Powell stated he could not be mistaken in his identification of defendant. On re-direct, when asked if there was any doubt in his mind about who shot him, Powell stated, "None whatsoever. No."

Defendant argues that trial counsel should have also obtained funds for and found eyewitness experts who would testify regarding Powell's ability to pick out defendant as his

shooter five months after the shooting and to question the photo array. We find that, at best, an eyewitness expert could convince a jury to look closely at the strength and certainty of Powell's identification of defendant as the shooter. The expert would not have made a difference in the outcome of the trial. Powell picked defendant's picture out of a photo array after about three seconds. He was adamant at trial that defendant was the shooter. The evidence showed that the incident took place in a well-lit parking lot and defendant did not have any covering over his face. Powell had ample time to get a good look at defendant's face before he was hit on his head from behind. He got another look at defendant when he looked back as defendant was shooting at him. In addition to Powell's positive identification, the bullet casings retrieved from the crime scene matched the gun that was directly connected to defendant.

We hold that defendant was not denied the effective assistance of counsel when his trial counsel did not seek out and find an expert who would question Powell's ability to remember his shooter. Defendant has failed to show that trial counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, or that but for an error by trial counsel the outcome would have been different, or that the proceedings were fundamentally unfair or unreliable.

## 2. OV 3

Defendant also contends for the first time that his trial attorney provided ineffective assistance of counsel when he failed to object to the scoring of OV 3 at 25 points. Defendant argues that the evidence only supports a score of 10 points, which would lower his sentencing guidelines range and require resentencing. We disagree.

MCL 777.33 concerns the scoring of points for OV 3. MCL 777.33(1)(c) and (d) provide:

> (1) Offense variable 3 is physical injury to a victim. Score offense variable 3 by determining which of the following apply and by assigning the number of points attributable to one that has the highest number of points:
>
> * * *
>
> (c) Life threatening or permanent incapacitating injury occurred to a victim ………………..…………………………………………… 25 points.
>
> (d) Bodily injury requiring medical treatment occurred to a victim
>
> ……………………………………………………………….… 10 points.

Powell testified that he sustained two gunshot wounds to the back of his legs, a fractured eye socket, and bruises on the top of his head. One of the shots fractured his femur and damaged his knee. He had undergone eight surgeries so far and would undergo another surgery the month after his testimony. The shooting still affected him, as he could only bend his knee about 30 degrees. We find that the evidence clearly supports the finding that Powell's injuries were permanently incapacitating. Therefore, the sentencing guidelines score was not based on an

inaccurate calculation, and defendant's attorney was not ineffective for failing to object to the scoring of OV 3.  The preponderance of the evidence supported a score of 25 points for OV 3.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Michael F. Gadola
/s/ Anica Letica