*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ANTOINE TERRANCE SIMMONS,

Defendant-Appellant.

UNPUBLISHED
December 10, 2020

No. 347853
Wayne Circuit Court
LC No. 18-007210-01-FC

Before: MURRAY, C.J., and K. F. KELLY and STEPHENS, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial convictions of armed robbery, MCL 750.529; possession of a firearm during the commission of a felony (felony-firearm), second offense, MCL 750.227b(1); and possession of a firearm by a convicted felon (felon-in-possession), MCL 750.224f. Defendant was sentenced, as a third-offense habitual offender, MCL 769.12, to 160 months to 40 years' imprisonment for his armed robbery conviction, five years' imprisonment for his felony-firearm conviction, and 5 to 10 years' imprisonment for his felon-in-possession conviction. We affirm.

## I. GREAT WEIGHT OF THE EVIDENCE

Defendant argues that his convictions are against the great weight of evidence. A new trial may be granted if the verdict is against the great weight of the evidence. MCR 2.611(A)(1)(e). "The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Musser*, 259 Mich App 215, 218-219; 673 NW2d 800 (2003). Determining whether a verdict is against the great weight of the evidence requires review of "the whole body of proofs, which necessarily includes an evaluation of the credibility of the witnesses." *People v Lemmon*, 456 Mich 625, 638-639; 576 NW2d 129 (1998) (quotation marks and citation omitted). A verdict is against the great weight of the evidence "only when the evidence does not reasonably support it and it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009).

A request for new trial that is based solely on the weight of the evidence regarding witness credibility is not favored, and should be granted only with great caution and in exceptional circumstances. *Lemmon*, 456 Mich at 639 and n 17. If the issue involves credibility and there is conflicting evidence, the question of credibility ordinarily should be left for the fact-finder. *Id.* at 642-643. Conflicting testimony, even if impeached to some extent, is not a sufficient ground for granting a new trial. *People v McCray*, 245 Mich App 631, 638; 630 NW2d 633 (2001). A narrow exception exists when testimony contradicts "indisputable physical facts or laws" or "defies physical realities." *Lemmon*, 456 Mich at 643-644 (quotation marks and citation omitted).

The essential elements of armed robbery include (1) the use of force or violence, during the course of committing a larceny, to assault any person present or put the person in fear, while (2) the defendant possessed a dangerous weapon, possessed an object used or fashioned to make a person reasonably believe it was a dangerous weapon, or represented orally or otherwise that he had a dangerous weapon. *People v Muhammad*, 326 Mich App 40, 61; 931 NW2d 20 (2018). "The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *Id.* (quotation marks and citation omitted). The essential elements of felon-in-possession include "(1) the defendant is a felon who possessed a firearm (2) before his right to do so was formally restored under MCL 28.424." *People v Bass*, 317 Mich App 241, 268; 893 NW2d 140 (2016). Further, "[i]t is well settled that 'identity is an element of every offense.' " *People v Savage*, 327 Mich App 604, 614; 935 NW2d 69 (2019), quoting *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008).

Defendant does not challenge any particular element of the crimes he was convicted of, but rather, only challenges his identity as the perpetrator. The trial court properly weighed the victim's testimony and identification of defendant with all of the evidence presented to support its verdict. Defendant argues that the verdict was against the great weight of the evidence because of the unreliability of the victim's in-court identification and the trial court's over reliance on the victim's testimony to convict defendant. To support his argument, defendant points to the poor conditions under which the victim observed her assailant, i.e., the dark street, brief interaction, and the victim's focus on the gun. As a result, defendant contends that the trial court heavily relied on the victim's testimony to convict him while ignoring the problems with her identification. Defendant points to his own testimony to explain his proximity to the incident and how the victim's belongings ended up in the Impala. However, even though the incident occurred at night and in a short period of time, the victim testified positively and certainly regarding defendant's identity as the man who stopped her at gunpoint, testifying "that's him all day long." Further, the victim's testimony was corroborated with much of the evidence presented at trial.

First, defendant's girlfriend loaned the Impala to defendant at about 11:00 p.m. the night the incident occurred. Two hours later, officers discovered the Impala parked on West Longwood, containing the victim's personal belongings taken during the incident. Fingerprint evidence placed defendant in the Impala. Defendant confirms that he drove the Impala the night of the incident, but argues that he has no knowledge of how the victim's personal belongings ended up in the Impala, and instead points to Gary Ellison as the perpetrator because the victim's handgun was discovered in Ellison's house. Defendant also insinuates that his cousin was responsible for the victim's belongings being in the Impala. However, the fingerprints of neither Ellison nor defendant's cousin were found on the Impala. Moreover, the victim did not identify Ellison as one of the men that robbed her in a live lineup at the police station.

-2-

Second, when defendant went to West Longwood in the Toyota, he sent his cousin to ask police to get the Impala instead of going himself; and when his cousin was speaking to Officer Joseph Weaver about the Impala, defendant left the scene. A trier of fact could reasonably interpret defendant's conduct as an attempt to evade the police and reclaim the Impala before evidence of the crime was discovered.

Third, the data collected from defendant's cell phone largely discounts defendant's testimony and alleged alibi. The GPS data for defendant's cell phone placed him near the incident at about 12:30 a.m., and placed him on West Longwood at about 1:45 a.m. Defendant testified that he was not involved in the incident because he misplaced his cell phone after leaving a relative's house located a mile from the incident at about 12:20 a.m. until 1:30 a.m., when his cousin returned his cell phone. However, defendant's phone records showed eight phone calls with Celia Dickerson between 12:16 a.m. and 2:26 a.m. Defendant claimed that he does not know anyone named Celia Dickerson, and maintains that his cousin made these calls from defendant's cell phone. Notably, five of the eights calls were made when defendant asserted having his cell phone, including four calls after defendant was at West Longwood. As a result, the continued calls to a person defendant does not know after he allegedly got his phone back from his cousin casts doubt as to whether defendant coincidentally misplaced his phone for the 50 minutes when the incident occurred. Therefore, a trier of fact could reasonably conclude that defendant's testimony that he did not possess his cell phone when it was tracked near the armed robbery incident was not credible.

The trial court weighed the victim's identification and testimony against all of the evidence, including defendant's testimony, and concluded, on the basis of its interpretation of all the witnesses' words, "tonal quality, volume, speech patterns, and demeanor," that the victim was credible whereas defendant was not credible. *Lemmon*, 456 Mich at 646. The evidence presented by the prosecution regarding defendant's location during the incident, including cell phone data, fingerprints, the location of the victim's personal belongings, and identification of defendant, was completely plausible, and did not defy any physical realities. *Id*. at 646-647.

Defendant's contention that this Court should override the trial court's witness credibility determinations is without merit. Witness credibility is "implicit" in deciding whether a verdict is against the great weight of the evidence. *Id*. at 638. This Court does not substitute its view on the issue of witness credibility for that of the fact-finder "absent exceptional circumstances." *Id*. at 642. When "testimony is in direct conflict and testimony supporting the verdict has been impeached," this Court leaves the determination of witness credibility to the fact-finder if "it cannot be said as a matter of law that the testimony thus impeached was deprived of all probative value . . . ." *Id*. at 643 (quotation marks and citation omitted). "Conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial." *Id*. at 647. Defendant has failed to point to an exceptional circumstance to warrant this Court usurping the trial court's witness credibility determinations. Therefore, even if the victim's identification of defendant was suppressed at trial, defendant's testimony regarding his alleged location did not preponderate so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. *People v Gadomski*, 232 Mich App 24, 28; 592 NW2d 75 (1998).

## II. IDENTIFICATION

Defendant next argues that the photographic lineup shown to the victim used improper identification procedures and led to unduly suggestive identifications of defendant.

A trial court's "decision to admit identification evidence will not be reversed unless it is clearly erroneous." *People v Kurylczyk*, 443 Mich 289, 303; 505 NW2d 528 (1993). "Clear error exists when the reviewing court is left with the definite and firm conviction that a mistake has been made." *Id*. Questions of law related to a motion to suppress identification testimony are reviewed de novo. *People v Hickman*, 470 Mich 602, 605; 684 NW2d 267 (2004).

"A photographic identification procedure violates a defendant's right to due process when it is so impermissibly suggestive that it creates a substantial likelihood of misidentification." *People v Woolfolk*, 304 Mich App 450, 457; 848 NW2d 169 (2014). "[A]n improper suggestion often arises when the witness when called by the police or prosecution either is told or believes that the police have apprehended the right person. Moreover, when the witness is shown only one person or a group in which one person is singled out in some way, he is tempted to presume that he is the person." *People v Gray*, 457 Mich 107, 111; 577 NW2d 92 (1998) (quotation marks and citation omitted). "Generally, the photo spread is not suggestive as long as it contains some photographs that are fairly representative of the defendant's physical features and thus sufficient to reasonably test the identification." *Kurylczyk*, 443 Mich at 304 (quotation marks and citation omitted). "[P]hysical differences affect the weight of an identification, not its admissibility." *People v Craft*, 325 Mich App 598, 610; 927 NW2d 708 (2018). "[W]hether [a photographic identification procedure] violates due process depends on the totality of the circumstances." *Woolfolk*, 304 Mich App at 457. "The relevant inquiry, therefore, is not whether the lineup photograph was suggestive, but whether it was unduly suggestive in light of all of the circumstances surrounding the identification." *Kurylczyk*, 443 Mich at 306.

The trial court properly admitted the out-of-court and in-court identifications of defendant, rejecting defendant's claim that the identifications were unduly suggestive. Defendant contends that by using his driver's license photograph, making all of the lineup photographs black and white, and including other men in the lineup that had dissimilar complexions and ages when compared to defendant, created a substantial likelihood of misidentification. However, "[i]f one were to accept defendant's complaints about the slight physical differences or variations, it would make it nearly impossible for the police to compose a lineup, forcing authorities to search for 'twin-like' individuals to match against a defendant." *People v McDade*, 301 Mich App 343, 358; 836 NW2d 266 (2013).

A review of the record shows that Sergeant Terrence Sims went to great lengths to preserve the fairness of the photographic lineup. These measures included using five other photographs of men who were of similar complexion, age, build, facial hair, and clothing as defendant. Because defendant was not in custody at the time, and the only available photograph of him was from his driver's license, Sergeant Sims placed all the photographs in a cut-out board which made all the photographs appear the same size. Moreover, to ensure all the photographs looked similar, Sergeant Sims printed the photographs in black and white to prevent defendant's photograph, which had a light blue background as opposed to white, from standing out from the other photographs. When the victim was shown the lineup, Sergeant Sims told the victim that her assailant might not be in the lineup, and assured her that there was no pressure to identify anyone. Further, a lineup is not impermissibly suggestive because of age differences between the defendant

and the other participants where the defendant's appearance is substantially similar to that of the other participants. *Id*. at 357. Because extensive measures were taken to ensure a fair lineup, the trial court could reasonably conclude that the photographic lineup was admissible and not unduly suggestive.

In addition, the trial court properly allowed the victim's in-court identification of defendant at trial. "The need to establish an independent basis for an in-court identification arises where the pretrial identification is tainted by improper procedure or is unduly suggestive." *People v Barclay*, 208 Mich App 670, 675; 528 NW2d 842 (1995). Because we concluded that the photographic lineup procedure was not improper or unduly suggestive, defendant failed to establish any basis for suppressing the victim's in-court identification of defendant. However, even if the photographic lineup was unduly suggestive, "in-court identification by the same witness still may be allowed if an independent basis for in-court identification can be established that is untainted by the suggestive pretrial procedure." *Kurylczyk*, 443 Mich at 303. To determine whether there is an independent basis for the admission of an in-court identification, this Court weighs as factors:

> (1) prior relationship with or knowledge of the defendant; (2) opportunity to observe the offense, including length of time, lighting, and proximity to the criminal act; (3) length of time between the offense and the disputed identification; (4) accuracy of description compared to the defendant's actual appearance; (5) previous proper identification or failure to identify the defendant; (6) any prelineup identification lineup of another person as the perpetrator; (7) the nature of the offense and the victim's age, intelligence, and psychological state; and (8) any idiosyncratic or special features of the defendant. [*People v Davis*, 241 Mich App 697, 702-703; 617 NW2d 381 (2000).]

Even if the photographic lineup was unduly suggestive, the victim's in-court identification of defendant would still be admissible because it was supported by a sufficient independent basis. The victim had an unobstructed view of defendant's face during the incident, which was lit by streetlights. Although defendant had noticeable tattoos on his arms that the victim did not describe, the victim testified that she only really looked at the gun in defendant's hand. The victim described the gun as a Glock or some other gun with a slide, and ammunition for a nine-millimeter gun was discovered in the Impala that defendant admitted to driving the night of the incident. Moreover, defendant is 5'9" and the victim described defendant as being between 5'9" and 5'10." The victim identified defendant in the photographic lineup less than 24 hours after the incident, and she identified defendant in court five months after the incident. The discrepancies noted by defendant, including the victim's description of defendant as wearing a white t-shirt and being about 30 years old, does not diminish the validity of the independent basis supporting the victim's identification of defendant. Rather, they pertain to the reliability of the identification and the weight attributable to it. Notably, the victim did not identify Ellison or anyone else in the live lineup at the police station. Because the fact-finder could reasonably conclude that the victim's identification was nonetheless reliable on the basis of her consistency and certainty, the trial court properly admitted the in-court identification of defendant.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

As his last argument, defendant asserts that he received ineffective assistance of counsel as a result of his trial attorney not opposing the admission of the out-of-court and in-court identifications admission at trial.

An argument of ineffective assistance of counsel must be raised below in a motion for a new trial or an evidentiary hearing under *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973). *People v Snider*, 239 Mich App 393, 423; 608 NW2d 502 (2000). Defendant first raised the issue of ineffective assistance of counsel in his brief on appeal. Because defendant did not raise the issue of ineffective assistance of counsel below, it is unpreserved for appellate review. *Snider*, 239 Mich App at 423.

The determination of whether a defendant has been deprived of the effective assistance of counsel presents a mixed question of fact and law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). The trial court's factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo. *Id*. Because defendant has not established a testimonial record at a *Ginther* hearing, however, this Court's review is limited to mistakes apparent on the record. *Snider*, 239 Mich App at 423.

Defendant asserts that he received ineffective assistance of counsel when his defense counsel failed to seek suppression of the photographic lineup or the in-court identification. However, defense counsel did object to the photographic lineup during trial, requesting a *Wade* hearing.[1] As a result, the trial court held a *Wade* hearing, and rejected defendant's argument that the photographic lineup was unduly suggestive. Further, as we already concluded, the identification procedures at issue here were not impermissibly suggestive or inadmissible. As a result, a motion to suppress the in-court identifications that resulted from the photographic lineup would have been futile. Because "[c]ounsel is not ineffective for failing to advance a meritless position or make a futile motion[,]" defense counsel's performance was not deficient. *People v Henry (After Remand)*, 305 Mich App 127, 141; 854 NW2d 114 (2014).

Affirmed.

/s/ Christopher M. Murray
/s/ Kirsten Frank Kelly
/s/ Cynthia Diane Stephens

---

[1] *United States v Wade*, 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967).