*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

UNPUBLISHED
January 21, 2021

V

No. 350273
Kent Circuit Court
LC No. 19-001415-FC

STEVE PATRICK BURRESS,

        Defendant-Appellant.

Before: REDFORD, P.J., and MARKEY and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his jury trial convictions of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a) and (2)(b) (sexual penetration of individual under 13 years of age by person 17 years or older), and accosting a child for immoral purposes, MCL 750.145a. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 25 to 75 years' imprisonment for the CSC-I conviction and 8 to 15 years' imprisonment for the accosting conviction. We affirm.

The victim, BH, lived with her grandmother, Jolanda Moore, and BH's brother, TB, when the sexual assault occurred. BH was nine years old at the time. She did not reside with defendant, who is TB's father. On New Year's Day 2019, BH and TB went for a visit to defendant's apartment with the plan to spend the night. Defendant resided in the apartment with his girlfriend and her three children—two girls and a boy. That night, BH was on the couch in the apartment watching television with defendant, TB, and some of the other children. BH testified that her feet were resting on an arm of the couch, that defendant was sitting in the middle of the couch, and that her head was on defendant's lap. According to BH, one of the girlfriend's daughters was on the other end of the couch, but she was asleep, and TB repeatedly walked up to the couch and talked to defendant. BH testified that both she and the other girl on the couch were covered with blankets.

BH asserted that, at some point, defendant "touched [her] body" on her "private." BH testified that defendant used his finger to rub her skin on the "inside" of her private part that she used to go bathroom. She further testified that defendant asked her "to feel his private part." She did not do so. BH claimed that after this happened she asked TB to call grandmother Moore. BH

-1-

testified that she told TB that defendant touched her "private part." BH maintained that she also told Moore what happened. BH contended that when defendant touched her, a boy was playing a video game on the TV, one girl, mentioned above, was on the couch sleeping, and the other girl and the children's mother were in a different room. BH testified that when Moore arrived to pick her up, defendant was in the bathroom talking to TB.

TB testified that on the night in question defendant asked him to "come here." According to TB, defendant took him into the bathroom and told him that BH was saying that defendant had touched her. TB testified that he "could just see in [defendant's] face that something was wrong." TB further testified:

> And I went and asked my sister [BH] what was wrong, and she kept on saying she just wanted to go home. And, like, she said—she said it, like, five times. Then she finally told me that—she said your dad was touching me. I didn't know who to believe.

TB construed BH's statements as meaning that defendant had touched her inappropriately. TB testified that BH was crying and hiding her face. TB further testified that BH then told him that defendant "was touching my private part." TB claimed that he asked defendant to use his phone so TB could call Moore and that defendant then left.

Moore testified that TB called her at 4:45 a.m. and stated that BH wanted to come home because defendant had touched her. Moore contended that during the phone call she heard BH crying in the background. Moore testified that defendant denied touching BH inappropriately. Moore further testified that when she entered the apartment she could tell that BH had been crying. Moore indicated that BH was acting out of character.

The prosecution presented several more witnesses who offered relatively brief testimony. The girl who was asleep on the couch when the sexual assault occurred testified that upon awakening, she saw BH crying. BH, however, would not tell her why she was crying. The other girl who was present in the apartment claimed that she was also on the couch with her sister, defendant, and BH. She additionally testified that she did not have a blanket. Defendant's now-former girlfriend testified that she spoke to BH that night and that BH told her that defendant was "rubbing on her stomach." Defense counsel objected to this testimony, arguing that the statement constituted hearsay. The trial court sustained the objection and instructed the jury to disregard the testimony. An investigator with Children's Protective Services (CPS) and two law enforcement officers also testified for the prosecution. A medical examination of BH had not been performed after the incident.

Defendant did not testify, nor did he present any witnesses. During her closing argument, the prosecutor made several remarks that defendant takes issue with on appeal. Those challenged comments will be examined in detail in our analysis. The jury found defendant guilty of CSC-I and accosting a child for an immoral purpose. Defendant now appeals.

Defendant argues that the verdicts were against the great weight of the evidence. Defendant points to five instances in which there were alleged inconsistencies, discrepancies, or conflicts in the evidence with respect to a particular event. Defendant's argument effectively

implicates the credibility of witness accounts as to each instance. Defendant has failed to demonstrate that the evidence showing that he committed the offenses contradicted indisputable physical facts or law, was patently incredible, defied physical realities, was so inherently implausible that a reasonable juror could not believe the evidence, or was so seriously impeached that it was deprived of all probative value. *People v Lemmon*, 456 Mich 625, 643; 576 NW2d 129 (1998); *People v Bosca*, 310 Mich App 1, 13; 871 NW2d 307 (2015). Because there were no exceptional circumstances as necessary to support a great-weight argument, the issues regarding the credibility of witnesses and the resolution of conflicting testimony, which ultimately are the bases for defendant's appellate argument, were for the jury to determine, not this Court. *Lemmon*, 456 Mich at 642-643. The discrepancies in the evidence regarding what phone TB used to call his grandmother, whether TB or BH spoke on the phone to Moore, how many individuals were sitting on the couch, whether or not defendant's ex-girlfriend questioned BH about the incident, and where BH obtained her blanket did not render the verdicts against the great weight of the evidence. *Id.* We note that none of the inconsistencies defendant relies on concerned BH's core claims that defendant digitally penetrated her vagina and asked her to touch his penis while she was on the couch. In sum, the evidence did not preponderate so heavily against the verdicts that it would be a miscarriage of justice to allow the verdicts to stand. *People v Musser*, 259 Mich App 215, 218-219; 673 NW2d 800 (2003).

Next, defendant argues that there were seven instances of prosecutorial misconduct involving either improper vouching by the prosecutor, arguing facts not in evidence, or a combination of the two. Defense counsel failed to object to all but one of these instances; consequently, defendant supplements his argument by contending that counsel was ineffective for failing to object to the misconduct. Unpreserved issues are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). Whether counsel was ineffective presents a mixed question of fact and constitutional law, and factual findings are reviewed for clear error, whereas questions of law are reviewed de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).[1] In *People v Dobek*, 274 Mich App 58, 63-64; 732 NW2d 546 (2007), this Court observed:

---

[1] In *People v Carbin,* 463 Mich 590, 599-600; 623 NW2d 884 (2001), the Michigan Supreme Court recited the well-established principles governing a claim of ineffective assistance of counsel:

> To justify reversal under either the federal or state constitutions, a convicted defendant must satisfy [a] two-part test . . . . First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not performing as the counsel guaranteed by the Sixth Amendment. In so doing, the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. Second, the defendant must show that the deficient performance prejudiced the defense. To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Because the defendant bears the burden of demonstrating both deficient

Given that a prosecutor's role and responsibility is to seek justice and not merely convict, the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial. A defendant's opportunity for a fair trial can be jeopardized when the prosecutor interjects issues broader than the defendant's guilt or innocence. Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context. The propriety of a prosecutor's remarks depends on all the facts of the case. A prosecutor's comments are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial. [Quotation marks and citations omitted.]

A prosecutor may not vouch for the credibility of a witness by implying that he or she has some special knowledge that the witness is testifying truthfully. *Id.* at 66. A prosecutor is, however, permitted to argue from the facts and testimony that a witness is credible or worthy of belief. *Id.* "A prosecutor may not make a factual statement to the jury that is not supported by the evidence, but he or she is free to argue the evidence and all reasonable inferences arising from it as they relate to his or her theory of the case[.]" *Id.* (citations omitted). A prosecutor has wide latitude in arguing the facts and reasonable inferences arising from the evidence. *Id.* And a prosecutor need not confine his or her argument to the blandest possible terms. *Id.* Over 125 years ago our Supreme Court in *People v Ringsted*, 90 Mich 371, 374; 51 NW 519 (1892), stated that a prosecutor may ask a "jury to apply to the facts in hand, inside of the jury-room, the same good common sense that they would exercise in coming to a conclusion upon the same state of facts outside of the jury-room[;] [j]urors are not to be debarred from using common sense in drawing inferences from testimony[.]"

A curative instruction from the trial court is generally considered "sufficient to cure the prejudicial effect of most inappropriate prosecutorial comments." *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008). In *People v Leshaj*, 249 Mich App 417, 419; 641 NW2d 872 (2002), this Court explained that "[n]o error requiring reversal will be found if the prejudicial effect of the prosecutor's comments could have been cured by a timely instruction." Any prejudice that flows from a prosecutor's improper comment may be mitigated by jury instructions. *People v Mann*, 288 Mich App 114, 122; 792 NW2d 53 (2010). "Jurors are presumed to follow their instructions and instructions are presumed to cure most errors." *Id.* at 122 n 23 (quotation marks and citation omitted).

First, speaking of BH, the prosecutor remarked, "She's in the fourth grade. Still in an elementary school. She hasn't even had sex ed yet." Defendant maintains that there were no facts in evidence supporting this statement. BH testified that she was in the fourth grade when the sexual assault occurred. And her brother, TB, testified that he was first taught about inappropriate

---

performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim. [Quotation marks and citations omitted.]

An attorney's performance is deficient if the representation falls below an objective standard of reasonableness. *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000).

touching when he was in the fifth grade. Therefore, it could reasonably be inferred from the testimony that BH had not yet taken any sex education classes when in fourth grade. Accordingly, there was no plain error, nor was defense counsel ineffective for failing to object to the prosecutor's comments. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

Second, defendant takes issue with the following comments made by the prosecutor during closing argument:

> Because this little girl has no reason in the universe, to have come up with this story. I've thought about this and thought about this. Nothing really fits. Why in the universe, under these facts, would this girl come up with this story? And everyone's corroborated what she told you, and she was brave enough to come in here and tell you what happened to her, even though no one really wants to talk about, and face the person that did it. But she did.

Defendant contends that this passage established that the prosecutor vouched for BH's credibility. We conclude that the prosecutor's remarks did not indicate that she had some special knowledge that BH was testifying truthfully; rather, the prosecutor was simply noting that BH was worthy of belief based on the facts and circumstances as developed by the testimony at trial. The prosecutor's arguments could also be viewed as merely asking the jurors to use common sense by drawing an inference from the testimony that BH was telling the truth. Accordingly, there was no plain error, nor was defense counsel ineffective for failing to object to the prosecutor's comments.

Third, the prosecutor asserted:

> [BH] told the interviewer on the fourth, a couple days later, and was interviewed using that forensic protocol . . . the detective watched as well as the CPS agent. And she told that person who's a stranger exactly what happened to her that day. Same thing.

Defense counsel objected to these comments, arguing that there was no evidence whatsoever that BH's claims were corroborated by a CPS official. Counsel maintained that the remarks were highly inappropriate and inaccurate. The trial court sustained the objection and instructed the jury to not discuss or consider the remarks and to disregard them. Defendant now asserts that the prosecutor was arguing facts not in evidence and improperly vouching for BH's credibility. As to the facts-not-in-evidence argument, there was testimony that a forensic interview took place, that a CPS investigator and detective watched the interview, and that forensic protocol was employed. The prosecutor's words, "[s]ame thing," following the preceding sentence suggested corroboration of BH's account of the sexual assault during the forensic interview, but there was no such evidence. If the prosecutor's aim was to suggest corroboration, it was highly inappropriate. The improper-vouching argument is apparently premised on the prosecutor's personal knowledge regarding the substance of the forensic interview, which was not made known to the jury through testimony. We initially note that the prosecutor's language was fairly vague and did not directly or expressly indicate that the forensic interview corroborated BH's version of events or was consistent with her trial testimony. Although we find this issue troubling, we hold

that the objection and the trial court's adamant curative instruction ameliorated any prejudice and adequately protected defendant's right to a fair trial. Indeed, under the circumstances, the jury may have been left with the impression that BH's testimony was not consistent with her forensic interview.

Fourth, the prosecutor made statements regarding the one daughter of defendant's ex-girlfriend who was not sleeping on the couch, noting, "And she even faced [defendant] in the courtroom. And you can imagine how scary that probably was. You could see it in [her] face because she did not want to talk about it."

Defendant claims improper vouching. We conclude that the prosecutor's remarks did not indicate that she had some special knowledge that the girl was testifying truthfully; rather, the prosecutor was simply asking the jurors to use common sense by drawing an inference from the surrounding circumstances and observations of the girl's demeanor that she was telling the truth. Accordingly, there was no plain error, nor was defense counsel ineffective for failing to object to the prosecutor's comments.

Fifth, the prosecutor stated as follows regarding the girl who was sleeping on the couch when the digital-vaginal penetration occurred:

> [E]verything they did that night, she corroborates. And you could just tell . . . it is scary having to face him. And—and be in front of him and all kinds of people. But I believe she did tell you the truth about where they were sitting and was going on that night.

Defendant again argues that the prosecutor engaged in improper vouching with these remarks. The first three sentences were fine because the prosecutor was merely asking the jury to infer from the surrounding circumstances and her demeanor that the girl was credible and worthy of belief. The last sentence in the passage, however, appeared to constitute improper vouching. But when the sentence is read in context by taking into consideration the language the prosecutor used before and after the quoted sentence, it becomes clear that the prosecutor was arguing that the girl was worthy of belief based on the surrounding circumstances and testimony. To the extent that the prosecutor's brief remark was improper, we find defendant has failed to demonstrate the requisite prejudice for purposes of plain-error review, *Carines*, 460 Mich at 763-764, and ineffective assistance of counsel, *People v Carbin,* 463 Mich 590, 600; 623 NW2d 884 (2001). The trial court instructed the jury that the lawyers' statements and arguments were not evidence, thereby diminishing any minimal prejudice that may have arisen. There is no reasonable probability that but for any assumed misconduct or error by the prosecutor in using the words, "I believe," that the outcome of the proceedings would have been different.

Sixth, the prosecutor made the following argument during her closing:

> How do you believe a little kid? Well, again, there is no reason in the universe for her to come up with this detailed story. If she wanted to come up with a story that someone touched her, she probably would just say he touched me. Well, where? In my privates. Would she talk about fingering? One finger. Moving it

around. Feeling weird. All that detail. If it didn't happen. No way. She's in fourth grade, and has not even had sex ed yet.

Defendant contends that the prosecutor was arguing facts not in evidence and vouching for BH's credibility. We hold that the prosecutor's remarks did not indicate that she had some special knowledge that BH was testifying truthfully; rather, once again, the prosecutor was simply noting that BH was worthy of belief based on the facts and circumstances as developed by the testimony at trial. And the prosecutor's argument could also be viewed as merely asking the jurors to use common sense by drawing an inference from the testimony that BH was telling the truth. Moreover, the evidence at trial, either expressly or inferentially, supported the prosecutor's comments. Accordingly, there was no plain error, nor was defense counsel ineffective for failing to object to the prosecutor's remarks.

With respect to the seventh instance cited by defendant, the prosecutor presented the following arguments:

> Had so much fun with these nice people, why would she, all of a sudden, come out of the blue and do this? Doesn't make any sense. She wouldn't want to rock the boat. You know, her grandma brought her over there. She got to do all this fun stuff. Doesn't make sense. Why would you want to talk to all these people about someone putting their fingers in your vagina? You wouldn't. You wouldn't want to talk to police officers and all that and then come into court and talk to strangers. And wouldn't want to see [the] guy again unless it actually happened to you.

Defendant contends that this passage showed that the prosecutor vouched for BH's credibility. Once again, we conclude that the prosecutor's remarks did not indicate that she had some special knowledge that BH was testifying truthfully; rather, the prosecutor was simply asserting that BH was worthy of belief based on the facts and circumstances as developed by the testimony at trial. The prosecutor was merely asking the jurors to use common sense by drawing an inference from the testimony that BH was telling the truth. Accordingly, there was no plain error, nor was defense counsel ineffective for failing to object to the prosecutor's comments.

With respect to defendant's claims of improper vouching connected to the instances involving BH discussed above, he additionally maintains that the "prosecutor essentially offered expert testimony about the way sexual abuse victims act without any support for her assertions whatsoever." This argument lacks merit. The prosecutor's remarks did not necessitate underlying supporting testimony by an expert. The prosecutor merely appealed to the juror's exercise of common sense on matters that fell within the realm or knowledge of lay persons. Accordingly, there was no plain error, nor was defense counsel ineffective for failing to object to the prosecutor's comments.[2]

---

[2] Defendant contends that his arguments are supported by our Supreme Court's decision in the consolidated appeals of *People v Thorpe* and *People v Harbison*, 504 Mich 230; 934 NW2d 693 (2019). But as the following excerpt from that opinion reveals, there is no pertinent analogy:

In a Standard 4 brief, defendant argues that Moore presented inadmissible double hearsay testimony when she testified to statements made by TB regarding statements made by BH to TB. Defendant also maintains that his former girlfriend presented inadmissible hearsay testimony when she testified to a statement made by BH that defendant was "rubbing on her stomach." Defendant contends that defense counsel was ineffective for failing to object to the hearsay testimony and for failing to file a motion in limine to exclude the admission of the hearsay testimony. Defendant additionally asserts that the prosecutor committed misconduct by eliciting the inadmissible hearsay testimony.

Defendant accepts that TB's testimony about what BH told him regarding the sexual assault was admissible under the tender-years exception to hearsay, MRE 803A. We agree and further conclude that Moore's testimony that TB told her that BH had informed TB that she had been assaulted did not constitute hearsay. A statement offered to show the effect on the hearer when the effect is relevant is not hearsay because the statement is not being admitted to prove the truth of the matter asserted. MRE 801(c); *People v Fisher*, 449 Mich 441, 449-450; 537 NW2d 577 (1995). Moore went to defendant's apartment in the middle of the night to pick up BH because of the allegations; therefore, the challenged testimony was offered to show the effect on the hearer, Moore, explaining why she drove to defendant's home to retrieve BH at such an unusual hour. Accordingly, both ends of defendant's double hearsay argument fail with respect to Moore's testimony. There was no ineffective assistance of counsel and no prosecutorial misconduct. Moreover, even if Moore's testimony were inadmissible, defendant simply cannot establish any prejudice. Again, defendant does not challenge TB's testimony concerning statements made by BH to TB, and TB testified that BH told him that defendant had inappropriately touched her private part. The fact that TB conveyed that information to Moore, who testified about the conversation, added very little, if anything, to the merits of the prosecution's case. Any presumed error was harmless and does not warrant reversal.

With respect to the testimony by defendant's ex-girlfriend, trial counsel objected to her testimony that BH told her that defendant had rubbed her stomach. The trial court sustained the objection and instructed the jury to disregard the testimony. In light of defense counsel's objection, the court's instruction to disregard the testimony, and the fact that the statement did not indicate that defendant had touched BH's vagina, we cannot conclude that defense counsel's performance

---

In *Thorpe*, we hold that expert witnesses may not testify that children overwhelmingly do not lie when reporting sexual abuse because such testimony improperly vouches for the complainant's veracity. And because Thorpe has established that this testimony more likely than not affected the outcome of the case, we reverse the judgment of the Court of Appeals and remand to the Allegan Circuit Court for a new trial. In *Harbison*, we hold that examining physicians cannot testify that a complainant has been sexually assaulted or has been diagnosed with sexual abuse without physical evidence that corroborates the complainant's account of sexual assault or abuse because such testimony vouches for the complainant's veracity and improperly interferes with the role of the jury. [*Id.* at 235.]

was deficient, that the prosecutor committed misconduct,[3] or that the requisite prejudice was established. Reversal is unwarranted.

Finally, in his Standard 4 brief, defendant argues that trial counsel was ineffective for failing to call BH's and TB's mother, Tamecia Armstrong, as a witness because TB, during his testimony, alluded to BH's making a claim about another incident of improper touching by one of Armstrong's friends. Defendant also maintains that Armstrong was an endorsed witness for the prosecution, that the prosecutor failed to exercise due diligence relative to producing her as a witness at trial, and that defendant was thus entitled to a missing-witness or adverse-inference instruction, M Crim JI 5.12. In regard to Armstrong's possible testimony, defendant does not provide any support for his contention that her testimony would have been beneficial to his defense. Defendant merely speculates that Armstrong would have been a helpful witness to the defense. In a motion to remand filed by defendant that touched on this issue, he failed to make any offer of proof or submit a supporting affidavit, MCR 7.211(C)(1)(a). And there is no argument or evidence that suggests that BH made a prior false claim of sexual abuse; consequently, defendant has not shown the factual predicate of his ineffective assistance argument. *Carbin*, 463 Mich at 600. Finally, assuming plain error as to defendant's associated arguments, we again conclude he cannot demonstrate the requisite prejudice. *Carines*, 460 Mich at 763-764.[4]

We affirm.

/s/ James Robert Redford
/s/ Jane E. Markey
/s/ Mark T. Boonstra

---

[3] The prosecutor argued to the trial court that the testimony was admissible as a present-sense impression, MRE 803(1). "A prosecutor's good-faith effort to admit evidence does not constitute misconduct." *Dobek*, 274 Mich App at 70. There is no indication that the prosecutor elicited the challenged testimony from the ex-girlfriend in bad faith.

[4] We also note that it is not clear from the record whether Armstrong was even an endorsed witness.