*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CALE ROBERT JOHNSTON,

        Defendant-Appellant.

UNPUBLISHED
September 19, 2024

No. 365723
Mecosta Circuit Court
LC No. 2022-010423-FH

---

Before: N. P. HOOD, P.J., and O'BRIEN and REDFORD, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of possession of methamphetamine, MCL 333.7403(2)(b)(*i*), and possession with intent to deliver methamphetamine, MCL 333.7401(2)(b)(*i*). We affirm.

## I. BACKGROUND

While executing a search warrant of a home owned by defendant, officers found methamphetamine. Defendant lived in the home with Karen Sudinski, Karen's daughter, and Karen's daughter's children.[1] Defendant was arrested and charged with possession of methamphetamine and possession with intent to deliver methamphetamine. Karen was also arrested and pleaded guilty to delivery of methamphetamine.

Attorney Ravi R. Gurumurthy was appointed to represent defendant. Before trial, Gurumurthy moved to withdraw as defendant's counsel, arguing that he and defendant had conflicting views regarding trial strategy. Gurumurthy stated that there was not a breakdown in the attorney-client relationship and that defendant did not request him to withdraw, but Gurumurthy nevertheless thought that he should withdraw due to his ethical concerns with defendant's preferred trial strategy. Gurumurthy believed that defendant wanted Gurumurthy to introduce possibly perjured testimony and prejudicial other-acts evidence.

---

[1] Karen's daughter's boyfriend may have also lived in the home.

-1-

The trial court denied the motion, reasoning that any issues involving witnesses could be resolved before trial. The court additionally reasoned that, if any ethical issues arose during trial, the jury could be sequestered and the issues could be resolved. After the trial court denied Gurumurthy's motion, the prosecution filed a motion in limine requesting that two of the defense's witnesses be excluded from testifying. The trial court granted the motion.

At trial, the prosecution introduced photographs taken while the search warrant was executed. The photos showed methamphetamine and drug paraphernalia in defendant's home. Detective Sergeant Michael Mohr and Detective Sergeant Joseph Marshall each testified that when they arrived at the home, defendant came out of a downstairs bedroom with Karen. In a nightstand in the bedroom, officers found methamphetamine in one drawer and defendant's mail in another. Officers found additional bags of methamphetamine and drug paraphernalia throughout the bedroom, as well as defendant's and Karen's personal items.

Officers also searched the basement of defendant's home and found methamphetamine residue and drug paraphernalia. Officers found a wooden box in the basement containing a "snorter tube" and "push tube" with methamphetamine residue. Officers also found two digital scales with methamphetamine residue on them and 50 to 100 small Ziploc bags. One of the bags contained methamphetamine residue. Marshall testified that the bags, referred to as "dime bags," were commonly used for packaging methamphetamine. Most of the methamphetamine found in the home was found in shards. Marshall explained that it is typical for shards of methamphetamine to be crushed up, weighed, and put into Ziploc bags to be distributed. At the close of the prosecution's case, defendant moved for a directed verdict, arguing that the prosecution presented insufficient evidence from which the jury could find beyond a reasonable doubt that defendant was guilty of the offenses charged. The trial court denied the motion.

The defense called Deputy Chad Thompson, who testified that some items were moved during the search. The defense also called Karen, who testified that the methamphetamine belonged to her and that defendant had no knowledge or involvement with the methamphetamine in the home. Karen stated that she was not in a relationship with defendant, but rather was a friend and a tenant in his home.

On cross-examination, Karen was questioned about a prior statement she made referring to defendant as her boyfriend. Karen explained that she made the statement because she wanted defendant to be her boyfriend, but he did not want a relationship. Karen later testified that a purse containing methamphetamine was found on her side of the bed. When cross-examined about what she meant by her "side of the bed," Karen admitted that defendant slept in the bedroom "a few times."

The jury found defendant guilty on both counts. This appeal followed.

## II. DIRECTED VERDICT

Defendant first argues that the trial court erred by denying his motion for a directed verdict because the evidence presented by the prosecution was insufficient to establish defendant's guilt. We disagree.

When determining whether a trial court erred by denying a motion for a directed verdict, "this Court reviews the record de novo to determine whether the evidence presented by the prosecutor, viewed in the light most favorable to the prosecutor, could persuade a rational trier of fact that the essential elements of the crime charged were proved beyond a reasonable doubt." *People v Aldrich*, 246 Mich App 101, 122; 631 NW2d 67 (2001).

"Circumstantial evidence and reasonable inferences arising therefrom may be sufficient to prove the elements of a crime." *People v Nelson*, 234 Mich App 454, 459; 594 NW2d 114 (1999). "Even in a case relying on circumstantial evidence, the prosecution need not negate every reasonable theory consistent with the defendant's innocence, but need merely introduce evidence sufficient to convince a reasonable jury in the face of whatever contradictory evidence the defendant may provide." *People v Hardiman*, 466 Mich 417, 423-424; 646 NW2d 158 (2002) (quotation marks and citation omitted).

First addressing the charge of possession of methamphetamine, MCL 333.7403(1) provides, "A person shall not knowingly or intentionally possess a controlled substance . . . unless the controlled substance . . . was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of the practitioner's professional practice." "Proof of possession of a controlled substance requires a showing of dominion or right of control over the drug with knowledge of its presence and character." *People v Meshell*, 265 Mich App 616, 621; 696 NW2d 754 (2005) (quotation marks and citation omitted). "Possession may be either actual or constructive, and may be joint or exclusive." *Id*. at 622.

"Constructive possession of an illegal substance signifies knowledge of its presence, knowledge of its character, and the right to control it." *People v McGhee*, 268 Mich App 600, 622-623; 709 NW2d 595 (2005). "Because it is difficult to prove an actor's state of mind, only minimal circumstantial evidence is required." *People v Brown*, 279 Mich App 116, 136; 755 NW2d 664 (2008). Still, "a person's presence, by itself, at a location where drugs are found is insufficient to prove constructive possession." *People v Wolfe*, 440 Mich 508, 520; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). "Instead, some additional connection between the defendant and the contraband must be shown." *Id*.

Viewing the evidence in the light most favorable to the prosecution, the evidence presented by the prosecution could persuade a reasonable trier of fact that the essential elements of possession of methamphetamine were proved beyond a reasonable doubt. The prosecution presented evidence that methamphetamine was found in a nightstand in the downstairs bedroom of the home. Additional methamphetamine and drug paraphernalia were found on a table or dresser in the bedroom. Methamphetamine residue and drug paraphernalia were also found in the basement of the home. When officers entered the home, defendant was in the bedroom. Mohr testified that defendant admitted that the nightstand was his. This was seemingly confirmed by the fact that defendant's mail was found in the nightstand. There was also a board in the room that appeared to have defendant's handwriting on it, and men's clothing and work gloves were found in the bedroom. Additionally, there were no other bedrooms in the home that appeared to be used by defendant. From this evidence, a reasonable jury could find beyond a reasonable doubt that defendant had knowledge of and control over methamphetamine found in his home.

Turning to the charge of possession of methamphetamine with the intent to deliver, MCL 333.7401(1) provides that "a person shall not manufacture, create, deliver, or possess with intent

to manufacture, create, or deliver a controlled substance, a prescription form, or a counterfeit prescription form." "The element of knowing possession with intent to deliver has two components: possession and intent." *Brown*, 279 Mich App at 136. "[P]ossession may be either actual or constructive." *Id*. " 'Deliver' or 'delivery' means the actual, constructive, or attempted transfer from 1 person to another of a controlled substance, whether or not there is an agency relationship." MCL 333.7105(1). "Possession with intent to deliver can be established by circumstantial evidence and reasonable inferences arising from that evidence, just as it can be established by direct evidence." *Wolfe*, 440 Mich at 526. "Intent to deliver may be inferred from the quantity of drugs in a defendant's possession." *McGhee*, 268 Mich App at 611.

Viewing the evidence in the light most favorable to the prosecution, the trial court did not err when it concluded that the prosecution presented evidence from which a reasonable trier of fact could find beyond a reasonable doubt that defendant was guilty of possession with intent to deliver methamphetamine. As explained above, the prosecution presented evidence sufficient to establish that defendant constructively possessed the methamphetamine found in his home. The prosecution's evidence established that methamphetamine was found in defendant's bedroom and in the drawers of a nightstand that defendant admitted was his. Methamphetamine was also found throughout the bedroom, where defendant's personal items were present.

The prosecution also presented evidence sufficient to establish defendant's intent to deliver the methamphetamine found in his home. Shards of methamphetamine were found in the home. Scales and a work table were found in defendant's basement, both containing methamphetamine residue. There were also 50 to 100 small plastic bags in the basement. Marshall testified that, when delivering methamphetamine, perpetrators typically break up shards of methamphetamine into smaller quantities, weigh it, and put it into plastic bags to be distributed. From this evidence, a reasonable juror could infer that defendant possessed shards of methamphetamine, broke them up, weighed them, and packaged them into bags to be transferred to other people. The trial court therefore did not err by denying defendant's motion for a directed verdict.

## IV. SUFFICIENCY OF THE EVIDENCE

Defendant next argues that the evidence presented by the prosecution was insufficient to sustain defendant's convictions. We disagree.

We "review de novo challenges to the sufficiency of the evidence, examining the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could have found every essential element proved beyond a reasonable doubt." *People v Mitchell*, 301 Mich App 282, 289; 835 NW2d 615 (2013). As this Court recently explained:

> A challenge to the sufficiency of evidence underpinning a conviction implicates due process. Due process requires that a prosecutor introduce evidence sufficient to justify a trier of fact to conclude that the defendant is guilty beyond a reasonable doubt. The prosecutor is not obligated to disprove every reasonable theory consistent with innocence to discharge its responsibility; it need only convince the jury in the face of whatever contradictory evidence the defendant may provide. We draw all reasonable inferences and credibility choices in support of the jury's verdict. [*People v Darga*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 363178); slip op at 6 (quotation marks and citations omitted).]

The defense and prosecution presented conflicting versions of the facts of the case. According to the prosecution, defendant and Karen were in a relationship, shared a bedroom, both possessed methamphetamine, and worked in tandem to package and deliver methamphetamine. According to the defense, defendant was merely Karen's landlord and had no knowledge that she possessed methamphetamine in the home.

"When reviewing a challenge to the sufficiency of the evidence, all conflicts in the evidence must be resolved in favor of the prosecution, and circumstantial evidence and all reasonable inferences drawn therefrom can constitute satisfactory proof of the crime." *People v Murphy*, 321 Mich App 355, 358-359; 910 NW2d 374 (2017). "The jury [is] free to accept or reject the theory of either party in light of the evidence presented at trial, and this Court will not interfere with the jury's role of determining issues of weight and credibility." *People v Ventour*, ___ Mich App ___; ___ NW2d ___ (2023) (Docket No. 363922); slip op at 7.

Viewing the evidence in a light most favorable to the prosecution, a reasonable juror could find beyond a reasonable doubt that defendant possessed methamphetamine. Methamphetamine was found in the home owned by defendant, including in a bedroom that officers witnessed defendant walk out of when they entered the home. Defendant identified a nightstand in the bedroom as his, and in that nightstand, officers found defendant's mail and a bag containing methamphetamine. Defendant's clothes and work gloves were also found in the bedroom. On the wall of the bedroom was a board with defendant's suspected handwriting on it. Further, methamphetamine residue was found in the basement of the home. From this evidence, a reasonable juror could find beyond a reasonable doubt that defendant had knowledge of and control over the methamphetamine found in his home.

A reasonable juror could likewise find beyond a reasonable doubt that defendant possessed the methamphetamine with the intent to deliver. Shards of methamphetamine were found in defendant's home. Scales containing methamphetamine residue were found in the basement, along with 50 to 100 bags. Marshall testified that it is typical for perpetrators to not work alone when selling methamphetamine. Marshall further testified that when methamphetamine is distributed, it often comes in large shards, which is broken up, weighed, and put into bags. From this testimony and the items found in defendant's home, a reasonable juror could infer that defendant possessed methamphetamine and intended to deliver it. The evidence was therefore sufficient to sustain defendant's convictions.

## V. GREAT WEIGHT OF THE EVIDENCE

Defendant next argues that his convictions were against the great weight of the evidence. We disagree.

Whether the jury's verdict was against the great weight of the evidence is not preserved because defendant did not move for a new trial before filing this appeal. See *People v Lopez*, 305 Mich App 686, 695; 854 NW2d 205 (2014). "Unpreserved challenges to the great weight of the evidence are reviewed for plain error affecting the defendant's substantial rights." *Id.* As explained by our Supreme Court:

To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the

plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. [*People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).]

"[A] new trial may be granted if the verdict is against the great weight of the evidence." *People v Lemmon*, 456 Mich 625, 635; 576 NW2d 129 (1998). "The operative principles regarding new trial motions are that the court may, in the interest of justice or to prevent a miscarriage of justice, grant the defendant's motion for a new trial." *Id*. (quotation marks and footnote omitted). "New trial motions based solely on the weight of the evidence regarding witness credibility are not favored." *Id*. at 639. "[A]bsent exceptional circumstances, issues of witness credibility are for the jury, and the trial court may not substitute its view of the credibility for the constitutionally guaranteed jury determination thereof." *Id*. at 642 (quotation marks and citation omitted).

As explained above, the prosecution presented sufficient evidence at trial from which a reasonable juror could find beyond a reasonable doubt that defendant was guilty of possession of methamphetamine and possession with intent to deliver methamphetamine. The defense's theory of the case was that defendant had no knowledge of methamphetamine in the home and that all the methamphetamine found was possessed solely by defendant's supposed tenant, Karen. However, the prosecution presented a different account of events. The prosecution presented a significant amount of evidence suggesting that the bedroom where the methamphetamine was found was shared by defendant. The prosecution also pointed out serious inconsistencies in Karen's testimony, calling into question her credibility. Defendant's argument on appeal is essentially that the jury should have credited Karen's testimony despite the overwhelming evidence undermining it. But it is not this Court's role to make determinations of witness credibility. See *Lemmon*, 456 Mich at 642. The jury was free to believe the testimony of the prosecution's witnesses and question the credibility of the defense's witnesses. Accordingly, defendant's argument that the jury's verdict was against the great weight of the evidence is without merit.

## VI. SUBSTITUTION OF COUNSEL

Defendant lastly argues that the trial court erred by denying Gurumurthy's motion to withdraw as defense counsel before trial. We disagree.

"We review a trial court's decision regarding a motion to withdraw for an abuse of discretion." *In re Withdrawal of Attorney*, 234 Mich App 421, 431; 594 NW2d 514 (1999). "A trial court abuses its discretion when it selects an outcome that does not fall within the range of reasonable and principled outcomes." *People v Young*, 276 Mich App 446, 448; 740 NW2d 347 (2007).

"Appointment of a substitute counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process." *People v Mack*, 190 Mich App 7, 14; 475 NW2d 830 (1991). "Good cause exists where a legitimate difference of opinion develops between a defendant and his appointed counsel with regard to a fundamental trial tactic." *Id*.

The trial court did not abuse its discretion by denying the motion to remove Gurumurthy as defendant's counsel. Defendant never requested that his counsel be substituted. Rather, Gurumurthy asked to be removed because he believed that he had an ethical obligation to withdraw

as defendant's counsel; he expressed concerns involving defendant wanting to introduce prejudicial other-acts evidence and perjured testimony at trial. In Gurumurthy's motion, he conceded that there was no breakdown of the attorney-client relationship, and stated that defendant did not wish to terminate the attorney-client relationship.

The Michigan Rules of Professional Conduct allow an attorney to withdraw from the representation of a client where "the client has used the lawyer's services to perpetrate a crime or fraud." MRCP 1.16. In this case, defendant did not use Gurumurthy's services to perpetuate a crime, but Gurumurthy argued that withdrawal was appropriate because defendant wanted him to take actions at trial that could potentially lead to his suborning perjury.

Rather than substitute Gurumurthy as defendant's counsel, the trial court proposed an alternate solution to address the ethical concerns raised by Gurumurthy. The trial court determined that concerns regarding perjured testimony could be dealt with by excluding witnesses before trial. Further, the trial court stated that if issues arose during trial, the jury could be sequestered and the issues could be addressed. By later granting the prosecution's motion to exclude witnesses, the trial court appeared to have effectively resolved the ethical issues raised in Gurumurthy's motion, as the issue was not raised again.

But regardless of whether this resolved Gurumurthy's concerns, defendant would still not be entitled to appellate relief on this claim. Defendant argues that he is entitled to a new trial because, as a result of the trial court's denial of Gurumurthy's motion, defendant was represented at trial by an attorney more concerned with his own welfare than the welfare of defendant. Yet defendant cites no specific actions taken by Gurumurthy during trial suggesting that he was not acting in defendant's best interests. Gurumurthy presented witnesses and thoroughly cross-examined the prosecution's witnesses. There is nothing to suggest that Gurumurthy was disinterested in defendant's case. In fact, defendant concedes that he cannot sustain an argument for ineffective assistance of counsel. We accordingly conclude that the trial court did not abuse its discretion by denying Gurumurthy's motion to withdraw.

Affirmed.

/s/ Noah P. Hood
/s/ Colleen A. O'Brien
/s/ James Robert Redford